## BEAR v COLONIAL FINANCE COMPANY

Ohio Appeals, 5th Dist, Stark Co

Decided May 16, 1932

Hart, Drunkenbrod & McHenry, Canton, for plaintiff in error.

Clayton Hoffman, Canton, for defendant in error.

SHERICK, PJ.

The plaintiff in error makes three contentions, the first being that the conduct of the defendant's agents on the day of his purchase estops the defendant company from now asserting its mortgage; second, that defendant's conduct after learning of plaintiff's purchase constituted a waiver of the defendant's chattel security; and, third, that the method and manner adopted by the defendant in repossessing the car constituted a conversion thereof.

In view of the failure of proof hereinbefore indicated, there can be no estoppel in this suit. It is elemental that knowledge on the part of one sought to be estopped is essential. It was not proven that the company's agents had knowledge of their company's mortgage, and, even if they did have such knowledge, such cannot be imputed to the principal. The agency proved was a limited agency to check cars, and it is not shown that the agents had authority to negotiate loans or to bind their principal outside the scope of their limited powers.

The second claim of the plaintiff must be answered in the negative, for it is not proved that the principal knew of or ratified the act and conduct of its checking agents.

A much more serious question is, however, presented by the third claim, and this we shall now proceed to consider. The evidence introduced on behalf of the plaintiff established the fact that the automobile was taken against the objection of the plaintiff, that his resistance was overcome by threatened arrest, and promise of a prompt return of the property seized. From this state of facts the duty develops upon this court to adopt the rule announced in Edmundson v Pollock, 5 C. C., 185, 3 C. D., 92, wherein the court held under the theory of an implied contract that a mortgagee after default had a right to repossess the mortgaged property by use of force so long as the force used was only such as to overcome the resistance offered, or to follow the rule applied in most jurisdictions, which is set forth in Jones on Chattel Mortgages (5th Ed.), §705, page 396, in the following

language: "But the law will not allow him (the mortgagee) to commit or to threaten a breach of the peace, and then to justify his conduct by a trial of the right of property. Instead of using force, the mortgagee must resort to his legal remedies."

This court in the case of M. J. Rose Co. v Lowery, 33 Oh Ap, 488, 169 NE, 716, which was an exaggerated case in which a mortgagee broke and entered the mortgagor's home, when the mortgagor was absent, and seized mortgaged property after default. approached the question now presented, but was not called upon therein to elaborate its views as to the law applicable to a situation like the present one. However, upon a closer consideration of the rule and reason therefor, we now see no reason why a rule should apply to an exaggerated case and not to one where a lesser degree of force is employed in the seizure.

A conversion has been defined as "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with one's rights." One may have a right to property, but he may assert that right in an unlawful and wrongful manner, and in so doing be guilty of converting to his own use the interest of another therein.

We quote with approval from a note in L. R. A., 1915E, at page 196: "In actions by the mortgagor against the mortgagee for the recovery of personal judgments for unlawful seizure of the mortgaged property, the courts have not found it necessary to distinguish between cases in which the mortgagee was, and those in which he was not, legally entitled to possession of the property seized. In either case the mortgagee is liable, and practically the same measure of damages applies in either case," and again, at page 200 of L. R. A., 1915E, "where the mortgagee is legally entitled to possession of the property, but becomes a wrongdoer by reason of the manner of acquiring possession only, he is, in the absence of proof of special damages resulting directly from the wrongful act, liable only for the value of the property at the time it was taken, less the amount of the mortgage debt." This rule of damages is, of course, under the state of the pleadings in the instant case as they now exist, of limited application, in that the defendant company in its answer does not plead a balance due under its mortgage, and hence proof thereof and thereunder would not have been properly received.

The case of Wilson Motor Co. v Dunn, 129 Okla., 211, 264 P., 194, 57 A. L. R., 17, is instructive. Its holding correctly states what we believe to be the generally accepted rule, and which is our view of the law herein applicable. Therein the court said: "Although a chattel mortgage provides that the mortgagee, under certain conditions, may take possession of the mortgaged property, yet neither the mortgagee, its assignee, nor their agents have the right to take possession of the property by force, threats, violence, or stealth, and without the consent of the mortgagor. The law will not permit a mortgagee to commit or threaten a breach of the peace and then to justify the conduct by a trial of the rights of property." A valuable note listing other authorities is appended to the report of this case in 57 A. L. R., 26.

In Ben Cooper Motor Co. v Amey, 143 Okla., 75, 287 P., 1,017, the same court made further remark to the effect that "A man is not required, in defending his property, to use physical force to resist the taking thereof by another. If he tells the other not to take the property, and the other person, in the face of the instruction, proceeds to take it, that may be conversion. The circumstances of each case must be considered in determining whether or not a 'breach of peace' has taken place, and the jury is the judge of the facts."

There is no question that a mortgagee after default has a right to the possession of the mortgaged property, as he is then the legal owner thereof, but until the property is repossessed the mortgagor unquestionably may pay the balance due, that is, exercise his equity of redemption, and, if the property be seized in an unlawful manner, he has been deprived of that right or equity, and of this he may complain. The right of the mortgagee, as said in 11 Corpus Juris, 560, is subject only to the restriction that the mortgagee, to secure possession of the mortgaged property after breach of condition, "must act in an orderly manner and without creating a breach of the peace." Surely it is a breach of peace to threaten one with arrest. It is in this instance a threat of preferring and prosecuting a groundless criminal charge contrary to our law, and is as equally reprehensible as if physical force had been employed to overcome resistance.

Two further authorities may well be mentioned, the first being Willis v Whittle, 82 S. C., 500, 64 SE, 410, wherein it is held: "The right to seize carries with it, by necessary implication, the right to do whatever is reasonably necessary to make the seizure —including the right to peaceably enter upon the premises of the mortgagor. There is one restriction, however, which the law

imposes upon this right. It must be exercised without provoking a breach of the peace; and if the mortgagee finds that he can not get possession without committing a breach of the peace, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it."

And the second is Street v Sinclair, 71 Ala., 110, where it is held that a mortgagee entitled to the possession of the property after default proceeds at his own peril in taking possession of the property, if he commits the slightest assault or other breach of the public peace, for, if individuals were thus allowed to redress their own private injuries, the peace of society and good order of government would cease.

We therefore conclude, in view of the reasons assigned and adopted, and having in mind the enormous increase in sales made where chattels are mortgaged back to secure the purchase price and the resultant repossessions which do of necessity follow, that it is the sounder policy to so restrict the unconscionable and unwarranted activity of unscrupulous and exacting mortgagees in the necessary recovery of their property. The poorer unsuspecting buyer is more deserving of the court's protection. Threats and force should not be abetted, and it must be remembered that one should have his day in court. The rule of Edmundson v Pollock, supra, is therefore, disapproved of, and it must follow that the motion for a directed verdict should have been overruled, and it should have been left to the jury to determine whether a breach of the peace had occurred.

Judgment reversed and cause remanded.

LEMERT and MONTGOMERY, JJ, concur.