### OHIO FINANCE CO v ROGENSKI

Ohio Appeals, 7th Dist, Mahoning Co

Decided April 6, 1934

Morris Mendelssohn, Youngstown, for plaintiff in error.

Harrington, Huxley & Smith, Youngstown, for defendant in error.

630

## OPINION

By ROBERTS, J.

There does not seem to be any dispute about the facts in this case. The agents of the company simply found the automobile where it had been parked and entered the garage and took it away. There was no breach of the peace, no assault, no threats, no violence, but it is contended that the conditions were such as to constitute wrongful possession.

Attention is called to the case of **Clark v The Studebaker Corporation, 35 Oh Ap, 54 (7 Abs 651).** Reading from the syllabus:

"Under mortgage providing that upon default mortgagee could repossess automobile and sell it at public or private sale without notice, automobile could be lawfully sold at private sale without notice if such sale was fair and reasonable.

Prima facie case was established for mortgagor suing mortgagee for conversion of mortgaged automobile, by showing that mortgagee sold automobile under circum- stances showing utter disregard of mortgagor's rights for less than outstanding indebtedness which automobile's value exceeded and at a price grossly inadequate.

Under chattel mortgage authorizing, upon default, sale without notice of mortgaged automobile by mortgagee who could purchase, sale to mortgagee's agent would ordinarily be valid.

If private sale of automobile under chattel mortgage was not fairly and reasonably made, nor for adequate price, mortgagor would have remedy against mortgagee."

This authority I have just read is applicable upon another proposition, but is not the one I intended to read at this time. Attention is called now to the case of **Bear v The Colonial Finance Company, 42 Oh Ap, 482, (12 Abs 643),** and reading from the syllabus:

"Although mortgage provides mortgagee may repossess property under certain conditions, neither mortgagee, mortgagee's assignee, nor their agents may retake property by force, threats or stealth.

Law will not permit mortgagee to threat- en breach of peace by retaking mortgaged property and then justify conduct by trial of right to property.

Mortgagee after default has right to possess property, as he is then legal owner thereof.

Mortgagee's right to repossess property after default is subject only to restriction that he not breach peace in retaking it.

Mortgagee's threatening to arrest defaulting mortgagor in mortgagee's repossessing mortgaged property constitutes breach of peace, amounting to conversion."

The taking of the automobile under the conditions involved concerning which there is no real dispute, did not constitute a breach of the peace, and under the authority which has been read, and others which have been considered, this court is of the opinion that the mortgagee had a right to take it in the manner in which that transaction occurred. The automobile was then sold by the Finance Company at a public sale, after advertising the same and the place of the sale in the Youngstown Vindicator, and previous notice had been given to the owner of the property concerning the date of the sale, in which a mistake was made as to the date. However, the terms of the mortgage, as read, provided that it might be sold without notice. The automobile was bid off and purchased by one of the persons present, for the sum of fifty dollars. It is claimed that this price was grossly inadequate; that the sale was unfair and illegal and should not be recognized, and that in this case the Finance Company should answer to the plaintiff in the fair value of his automobile, less the amount which was owed by the plaintiff to the Finance Company and which amount is secured by the chattel mortgage.

As is recalled, four persons made bids upon the automobile. One bid was perhaps $20.00 and other bids were made ranging up to $50.00, for which the automobile was sold. No contention is made but that the sale was made at the place advertised and was public, and the public was free to and invited to buy the automobile. The plaintiff introduced testimony to the effect that the automobile was worth various sums, in the opinion of the different witnesses testifying upon the subject, ranging up to perhaps $350.00. On the other side, some four witnesses testified to the value of the automobile, giving it a value from $15.00 to $60.00. It can not be said, in view of the testimony of either side, concerning the value of this automobile, that the price

for which it was sold was decidedly against the manifest weight of the evidence.

There is considerable dispute as to the condition of the automobile. It was a second hand car and had been used several years. There was testimony that some of the fenders, the windshield and the top were gone, and, as is recalled, the purchaser testified to various sums that he expended for repairs after buying it. These amounted to something like forty or fifty dollars. The Finance Company, the mortgagee, did not buy the property, but it was bought by an outsider, appearing as a disinterested party and desiring to purchase the automobile. The verdict of the jury was the result, to some extent, of the instructions of the court to the jury, but it may be said that the only proposition really important now for present consideration is the manner of the sale.

Upon the resting of the plaintiff of his evidence in the trial in the Court of Common Pleas, the attorneys for the company made a motion for a directed verdict, which was overruled, and properly so, for at least one reason, and that is that the motion was not renewed at the close of all the testimony. The trial court, however, resolved every proposition urged in the argument of this motion for a directed verdict in favor of the Finance Company except one, and that was the liability of the Finance Company taking into consideration the manner of the sale. That is about all we have as being objected to at this time. The court, on page 152 of the record, says:

"As I view the case, the law gives them the legal right to repossess themselves of the car in question, and to sell the car in question, but the law that gives them this right, does charge them with the responsibility to see that a fair sale is had and that it is reasonably made, and that a fair and adequate market price is obtained in the sale of that car, and if they have not so conducted themselves and you so find from the testimony of this case, then, of course, Mr. Rogenski would be entitled to your verdict, providing you find he has been damaged in this case."

The effect of this instruction on the jury: in fact, it was a positive direction, was that no matter if the car was sold to the highest bidder—it was a public sale and everyone had a right to buy—then the price paid must have been the fair and reasonable value of the car, else the sale would be void or the mortgagee would be liable for the difference between the sale price and the fair value of the car. If that theory be accepted as true, we have bearing upon it the testimony of various witnesses that the value of the car was no greater or it was less than the amount for which it was sold. We have also the fact that the public was invited to attend and participate and no one who went there presumably to buy the car was willing to give more than fifty dollars, which is a pretty strong indication of what the real market value was. It is a matter of general knowledge that the market value of second hand cars, several years old is very low.

Conceding that that all is true, or that that is the proper construction, attention is directed to the case of **Beard v Westerman, 32 Oh St, 29**. In the syllabus in that case it is said:

"A party holding one of a series of notes secured by chattel mortgage, who obtains possession of the property mortgaged, holds it in trust for the owners of the notes; and if he purchase such property at a sale by himself, he will be held to account for the fair value of the same."

This is a very different proposition from the instant case. The chattel mortgage company did not buy the automobile.. It was purchased by an outsider. Turning now to the opinion, on page 32 it is said by the court:

"Perhaps the result might have been different had Beard purchased at a sale under legal proceedings. Had he foreclosed his chattel mortgage, and bought at the sheriff's sale, even had he bought at a figure greatly less than the real value, it would have ended his trust, leaving Westerman without remedy."

So that the rule as determined by the Supreme Court, and no Supreme Court decision, so far as observed, has modified this rule, limits the liability of responsibility notwithstanding the purchase price be the real value of the property, to the condition where the mortgagee himself buys it off and not where it is bid off by a member of the attending public.

So that so far as this sale is concerned, it was consonant with the terms of the mortgage acceded to by the mortgagor. Automobiles as security, for instance, are mighty hazardous property, subject to loss in value and to absolute destruction in frequent instances, but however, it is the duty of the court in any event to recognize the legal rights which have been acquired

by mortgagees by the contract voluntarily entered into by the mortgagor, and the result of our deliberations in this case is that the terms of the contract which must be recognized between the parties were substantially complied with, the sale was as agreed upon or agreed to by the mortgagor, and that reversible error did occur in this case, in that it is against the manifest weight of the evidence, and in the overruling of the motion for new trial. The judgment of the court below is reversed.

Judgment reversed.

FARR and LYNCH, JJ, concur in the judgment.