MERRITT, Circuit Judge.
 

 This bankruptcy case arises from the set-off by an agent of approximately $84,000 in order to recoup mistaken overpayments paid to the creditor of its principal, a Chapter 11 debtor. The setoff occurred in the context of a somewhat complex financing arrangement involving the principal, its agent, and the creditor bank.
 

 The principal, coal producer Hurricane Elkhorn Coal Co., in order to secure continuing operating capital loans from the creditor bank, First National Bank of Louisville, executed to the bank absolute and irrevocable assignments of certain accounts receivables from two major coal buyers as sale and delivery of coal shipments occurred. The bank, upon receipt of these assignments, would advance 80% of the estimated amount of the accounts receivables to the coal company. Hurricane Elkhorn authorized its agent, Logan and
 
 *189
 
 Kanawha, both to receive the coal buyers’ payments and to pay over to the bank the proceeds of the accounts receivables as they were paid by the coal buyers. The agency agreement also authorized Logan and Kanawha to keep 4% of the proceeds of the accounts receivables as its commission. Upon receipt of the payments from Logan and Kanawha, the bank would deposit the entire payment into Hurricane Elkhorn’s operating account and then debit an amount equal to its earlier advance. This debited amount would be transferred to the bank’s general assets to repay the advance. The bank would either debit all of a given payment to recoup an advance or apply only a portion of the payment for that purpose, leaving the remainder in Hurricane Elkhorn’s operating account. All of these transactions functioned as part of the financing arrangement between Hurricane Elkhorn and the bank.
 

 Beginning in March 1980, Logan and Ka-nawha made several computing errors and mistakenly made overpayments to the bank totalling $84,652.60. The record is unclear as to whether the bank debited all of this amount as a payment on outstanding loans or left 20% or some other part of it in Hurricane Elkhorn’s operating account. There is no dispute, however, that the $84,-652.60 was in fact an overpayment and that Logan and Kanawha has remitted to the bank all of the accounts receivables from the two coal buyers for which it was contractually responsible.
 

 When Logan and Kanawha discovered its accounting mistake nearly a year later, it retained $84,652.60 of a coal buyer’s accounts receivable payment as a setoff against the bank for the earlier overpayment. It then submitted to the bank the remainder of the buyer’s payment. Just before Logan and Kanawha executed this setoff, Hurricane Elkhorn had filed a Chapter 11 reorganization petition in Bankruptcy Court.
 

 Hurricane Elkhorn and the bank sued the agent in Bankruptcy Court under the collection agreement; the agent claimed an equitable setoff or defense based on resti-tutionary principles. The Bankruptcy Court held for Hurricane Elkhorn and the bank and ordered the agent to turn over the money to the bankrupt estate.
 
 In Re Hurricane Elkhorn Coal Corp. II,
 
 19 Bankr. 609 (W.D.Ky.1982) motion to alter judgment overruled 20 B.R. 631. The District Court reversed, holding that the agent was entitled to a “constructive trust” on the whole amount mistakenly paid. 32 B.R. 737.
 

 Hurricane Elkhorn did not file a notice of appeal from the District Court’s decision and by letter stated to the clerk of our Court that it had no interest in the outcome of the case. The debtor’s Chapter 11 petition has been dismissed, with no reorganization plan having been confirmed.
 

 The controversy therefore is between agent Logan and Kanawha and assignee First National. The bank asserts that it is entitled to the $84,652.60 which Logan and Kanawha retained from the assigned accounts receivables. Defendant Logan and Kanawha relies on a setoff defense, claiming that because it earlier had tendered overpayments to the bank totalling $84,-652.60, it was entitled to set off the amount that it had mistakenly overpaid from its own funds.
 

 It is important to note that, although the bank filed suit on the basis of the collection agreement, the bank admits that L & K has paid it all of the money to which the bank was entitled by virtue of the assigned accounts receivables. The bank therefore asserts a claim to money above and beyond what L & K, as collection agent for Hurricane Elkhorn, ever owed the bank. There is no dispute concerning this issue. There is similarly no dispute that overpayments were in fact made. L & K introduced detailed proof of the clerical and accounting errors that led to the mistaken over-payments.
 

 The bank is challenging a setoff. The bank is not being charged to repay funds presently in its possession for L & K’s mistaken overpayments. The basis for the bank’s challenge is its assertion that L & K’s setoff actually functioned as against a
 
 *190
 
 Chapter 11 debtor, that the setoff violated the automatic stay under 11 U.S.C. § 362, and that the bank is entitled to receive the money in the debtor’s stead since Hurricane Elkhorn has now relinquished any rights to the proceeds.
 

 First, it is clear that allowing the bank to reap a windfall from L & K’s mistake, when that mistake did not cause any loss or prejudice to the bank, would constitute unjust enrichment. Although the bank argues that it was prejudiced by the setoff, the bank documents no cognizable prejudice as a result of L & K’s original over-payments or subsequent setoff. The only criterion the bank used in making advances to Hurricane Elkhorn was receipt of the assigned accounts receivables; the bank could not in any way have relied on the existence of mistakenly conferred excess funds to advance more funds to its debtor. The bank admits that it has received all the funds it was owed under the assigned accounts. The bank seeks merely to take advantage of its debtor’s former Chapter 11 status, a status which did not culminate in a confirmed reorganization plan, to gain money mistakenly paid from funds of the debtor’s agent.
 

 Second, however, even assuming that the bank would not be unjustly enriched by such a recovery because it left some of the mistaken payments in the debtor’s operating account, the bank’s position at minimum justifies placing on it the burden of proving the essential element of its claim, that is, that L & K’s setoff actually affected the estate of the debtor rather than the bank. Burden of proof allocations are governed by principles of fairness, common sense, and logic. A guiding principle is to assign the burden to the
 
 “party who presumably has peculiar means of knowledge
 
 enabling him to prove its falsity if it is false.”
 
 See
 
 9 J. Wigmore,
 
 Evidence in Trials at Common Law
 
 § 2486 at 290 (rev. 1981) (emphasis in original). Another consideration is to allocate the burden of proof to the party to whose case the fact is essential. Both of these principles strongly suggest the appropriateness of placing the burden on the bank to prove that the overpayments made payable to it were not, contrary to its stated general practice, used to offset earlier advances.
 

 We are not faced here with a plaintiff seeking to trace and disgorge funds in the hands of a defendant who was allegedly unjustly enriched by mistake. The bank is the plaintiff in an adversary proceeding in bankruptcy. A setoff has occurred, and one party is seeking to characterize the setoff as violative of the automatic stay since it allegedly functioned against a Chapter 11 debtor. It is true that setoff is an affirmative defense which must be pled and proven by the party asserting it.
 
 See Lyric Piano Co. v. Purvis,
 
 194 Ky. 826, 241 S.W. 69 (1922). Thus L & K here must carry the burden of proving that it did in fact tender overpayments to the bank in the amount asserted. This burden has been met amply by L & K. No sensible principle compels placing on L & K any additional burden of proving as a matter of the bank’s accounting and debiting practices that the setoff affected the bankrupt estate rather than the bank alone.
 

 A careful review of the record reveals no proof as to whether the bank debited to the debtor’s account some, all, or none of the overpayments. Both bank officers testified as to their general operating procedures concerning the payments received from L & K, but neither could document specifically what had been done relative to the particular overpayments. The bank may have kept it all or left 20% in the debtor’s operating account. Given the bank’s position in this equitable action, it is incumbent upon it to prove that the setoff actually functioned as against the Chapter 11 debtor. It is the bank’s accounting system which is at issue. The bank is in the best position to know and prove what happened. Lack of proof on this issue defeats the bank’s asserted right to L & K’s overpayment. Further, there is no persuasive justification for allowing the bank to gain a windfall in recovering L & K’s mistaken overpayments. This is particularly true since the bank proved no prejudice as a result of the overpayments and since it has
 
 *191
 
 admitted that it has been compensated fully for its advances on the accounts receivables.
 

 Although the analogy is not perfect, the situation presented in this equitable action is most like that of a benefit mistakenly conferred on one party, who then has the option of proving that the benefit did not inure to it because the benefit was passed on to a third party.
 
 See
 
 D. Dobbs,
 
 Remedies
 
 § 11.9 at 766-68; Restatement of Restitution § 142 Ill. 4 (1937). Had the bank proven the disposition of L & K’s over-payments, we would be faced with a different situation. In the absence of that proof, the bank’s claim fails.
 

 Accordingly, the judgment of the District Court is AFFIRMED.