**In re REHAB PROJECT, INC., Debtor.**

**Bruce Comly French, Trustee, Plaintiff,**

v.

**Bank One, Lima N.A. Defendants.**

**Bankruptcy Nos. 98–3233, 98–30548.**

United States Bankruptcy Court, N.D. Ohio.

April 15, 1999.

Bruce Comly French, Lima, OH, trustee/plaintiff.

Howard B. Hershman, Toledo, OH, for defendant.

## MEMORANDUM OPINION
## AND DECISION

RICHARD L. SPEER, Chief Judge.

This cause comes before the Court upon the Plaintiff's Motion for Summary Judgment, Memorandum in Support, and the Plaintiff's response to the Defendant's Motion for Summary Judgment: and the Defendant's Motion for Summary Judgment, Memorandum in Support, and Memorandum in Opposition to the Plaintiff's Summary Judgment Motion. This Court has reviewed the arguments of Counsel, the exhibits, as well as the entire record of the case. Based upon that review, and for the following reasons, the Court finds that the Plaintiff's Motion for Summary Judgment should be DENIED: and that the Defendant's Motion for Summary Judgment should be GRANTED.

### FACTS

This is an adversarial proceeding brought by Bruce C. French (hereinafter Trustee), the acting Trustee for the bankruptcy estate of Rehab Projects, Inc. (hereinafter Debtor), against the Defendant, Bank One, Lima N.A. (hereinafter Bank), to recover Twenty Thousand Dollars the Bank setoff against the Debtor's bank accounts. The events giving rise to this proceeding are not in dispute.

The Debtor is a nonprofit organization whose business involved rehabilitating houses for low income families in the Lima, Ohio area. In 1993, the Debtor, who had over a half million dollars ($500,000.00) in assets and whose yearly cash flow could reach well over Four Hundred Thousand Dollars ($400,000.00), borrowed One Hundred Thousand Dollars ($100,000.00) from the Bank, the obligation of which was memorialized by a business promissory note executed in the Bank's favor. At the time this loan was consummated, a member of Debtor's Board of Directors was an employee of the Bank. The promissory note provided that the foregoing obligation was to be paid in monthly installments over a period of six years. The Debtor was current on this obligation through at least April of 1997, but thereafter defaulted, leaving a running balance on the promissory note of at least Thirty Thousand Nine Hundred Eighty-four and 95/100 Dollars ($30,984.95).

On November 20, 1997, the Bank setoff three business checking accounts the Debtor maintained with the Bank, totaling Nineteen Thousand Three Hundred Fifteen and 54/100 Dollars ($19,315.54), to partially satisfy the outstanding obligation owed by the Debtor on the promissory note. Prior to that time, but after the Debtor had defaulted on its loan obligation, the Debtor's checking accounts revealed the following activity: Two Thousand Four Hundred Fifty-seven Dollars ($2,457.00) in deposits made between October 27 and November 10 of 1997, and a One Hundred Eighty-seven and 50 100 Dollars ($187.50) debit made on November 18, 1997. On February 18, 1998, exactly 90 days after the Bank setoff the Debtor's

checking accounts, the Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

Thereafter, the Trustee filed his Complaint to recover the setoff made by the Bank. The basis for the Trustee's action was that the setoffs received by the Bank were preferential pursuant to 11 U.S.C. §§ 553 and 547. In addition, the Trustee contends that the Bank converted the Debtor's funds, and that the setoffs the Bank received constituted an "insider" payment because of the close relationship between the Bank and the Debtor.

## LAW

The Bankruptcy Code provides in pertinent part:

### 11 U.S.C. § 553(b). Setoff

(b)(1) Except with respect to a setoff of a kind described in section 362(b)(6), 362(b)(7), 362(b)(14), 365(h), 546(h), or 365(i)(2) of this title, if a creditor offsets a mutual debt owing to the debtor against a claim against the debtor on or within 90 days before the date of the filing of the petition, then the trustee may recover from such creditor the amount so offset to the extent that any insufficiency on the date of such setoff is less than the insufficiency on the later of—

(A) 90 days before the date of the filing of the petition; and

(B) the first date during the 90 days immediately preceding the date of the filing of the petition on which there is an insufficiency.

(2) In this subsection, "insufficiency" means amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim.

### 11 U.S.C. § 547. Preferences.

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

## DISCUSSION

Determinations concerning administration of the debtor's estate; orders to turn over property of the estate; proceedings to determine, avoid, or recover preferences; and other proceedings affecting the liquidation of the assets of the estate are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

This case comes before this Court upon the Parties' Cross Motions for Summary Judgment. Under the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7056, a party will prevail on a motion for summary judgment when, "[t]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

matter of law." Fed.R.Civ.P. 56(c). Pursuant to this standard, a three-step analysis is undertaken by the Court to determine if summary judgment is appropriate.

First, the Court determines whether there are "genuine" issues in the proceeding. A genuine issue is one that must be decided at trial because the evidence, when viewed in the light most favorable to the nonmovant, would allow a reasonable juror to resolve the issue in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–250, 106 S.Ct. 2505, 2510–2511, 91 L.Ed.2d 202 (1986); *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). Second, if the Court determines that genuine issues do in fact exist, the Court must then ascertain whether any of these genuine issues might affect a "material fact" of the case. A material fact being one that will affect the outcome of the suit under the governing law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996); *Federal Deposit Ins. Corp. v. Municipality of Ponce*, 904 F.2d 740, 742 (1st Cir.1990). Next, if the court finds that genuine issues of material fact do exist, the inquiry immediately stops, and summary judgment must be denied. However, if the court is completely satisfied, after giving the nonmoving party the benefit of all reasonable inferences, that no genuine issues of material fact exist, then the court asks whether the moving party is entitled to a judgment as a matter of law. This analysis entails ascertaining whether the moving party has put forth sufficient evidence to demonstrate that all the elements of his cause of action have been met. *R.E. Cruise, Inc. v. Bruggeman*, 508 F.2d 415, 416 (6th Cir. 1975).

Upon the moving party establishing the foregoing elements, its burden has been met. However, this does not in itself entitle the moving party to a judgment in its favor. Rather, at this point the burden shifts to the nonmoving party which may still defeat the summary judgment motion by setting forth specific facts showing that there are genuine issues for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, merely resting upon allegations or denials in the pleadings is insufficient. Fed.R.Civ.P. 56(e). In making the determination of whether the parties have met their respective burdens, the Court is directed to view all facts in the light most favorable to the party opposing the summary judgment motion. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also In re Bell*, 181 B.R. 311 (Bankr.N.D.Ohio 1995).

In addition, in cases such as this, where the Parties have filed cross motions for summary judgment, the court must consider each motion separately, since each party, as a movant for summary judgment, bears the burden of establishing the nonexistence of genuine issues of material fact, and that party's entitlement to judgment as a matter of law. Thus, the fact that both parties simultaneously argue that there are no genuine factual issues does not in itself establish that a trial is unnecessary, and the fact that one party has failed to sustain its burden under F.R.C.P. 56 does not automatically entitle the opposing party to summary judgment. Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2720, at 16–17 (1983). However, in the cross-motion context, a lighter burden is imposed upon the party who does not face the burden of proof at trial, because it need only point to the insufficiency of the evidence to prevail on a summary judgment motion as opposed to having to establish that all the elements of its cause of action are met. *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)).

Having established the standard by which the Court will examine the evidence and facts of this proceeding, the Court now turns to address the substantive issues of the case. The Trustee's reason for bringing this action is to recover the prepetition setoff the Bank effectuated against the Debtor's three checking accounts. In his Complaint, the Trustee has put forth essentially four legal arguments, which the following will examine, to recover the prepetition setoff made by the Bank.

### PREFERENCE UNDER § 553(b)

The first, and primary basis, asserted by the Trustee to recover the prepetition setoff made by the Bank was that such an action was preferential pursuant to § 553(b). However, before discussing this contention, an overview of § 553 is in order.

■ Section 553 of the Bankruptcy Code is entitled "Setoff," and as its name suggests, it deals exclusively with establishing a creditor's right to setoff in the context of a debtor's bankruptcy proceeding. The actual principle of setoff is equitable, and occurs when two parties, each of whom are indebted to the other, extinguish unrelated cross-demands against each other, leaving one party entirely indebted to the other. The most common situation for setoff arises when banking institutions use it to satisfy loan obligations made to customers who are both depositors (i.e., creditor) as well as borrowers (i.e., debtor). *In re Learn*, 95 B.R. 495, 496 (Bankr. N.D.Ohio 1989). The importance of establishing a creditor's[1] right to setoff under § 553 is that once established, the debtor's bankruptcy will not affect that right.

§ 553(a).[2] This means that a creditor who establishes the elements of § 553 is entitled to keep any monies it sets off against the debtor's account(s) regardless of whether the debtor subsequently files for bankruptcy. In addition, the creditor will be treated as if it had a perfected security interest to the extent of its right to setoff under § 553(a). § 506(a).

■ Notwithstanding this general rule, § 553 contains a few exceptions which, if applicable, will necessitate the creditor returning to the bankruptcy estate a prepetition setoff that was otherwise valid. The policy underlying all these exceptions is based upon the objective of discouraging creditors from artificially creating or enlarging their right to setoff during the debtor's slide into bankruptcy. *See Lee v. Schweiker*, 739 F.2d 870, 877 (3rd Cir. 1984). Specifically germane to the case at bar is § 553(b) which requires a creditor to return to the bankruptcy estate any prepetition setoff to the extent to which the creditor improved its position by the setoff during the 90–day period immediately preceding the debtor's bankruptcy petition. In order to ascertain if this occurred, the following formula is employed:

First, it is determined what the creditor's "insufficiency" was at the time the setoff occurred. The term "insufficiency" is defined by § 553(b)(2), and means the "amount, if any, by which a claim against the debtor exceeds a mutual debt owing to the debtor by the holder of such claim." Another simpler way of putting this is to ask by what amount does the creditor's claim against the debtor exceed the debtor's claim against the creditor. For example, if a creditor owes a debtor Five Thousand Dollars ($5,000.00), and the debtor

---

1. For simplicity sake, the party exercising the right to setoff will be referred to as the creditor. However, it should be remembered that when a setoff occurs, each party is both a creditor and a debtor to the other party.

2. Section 553(a) provides that, "[e]xcept as otherwise provided in this section and in sec-

tions 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case."

owes the creditor Twenty Thousand Dollars ($20,000.00), then the amount of the creditor's insufficiency is Fifteen Thousand Dollars ($15,000.00). Next it is ascertained what the creditor's insufficiency was on the 90th day immediately prior to the debtor's bankruptcy petition, or if there was no insufficiency on the 90th day immediately preceding the bankruptcy filing, then on the first day in which there was an insufficiency. Finally, a comparison is made between the two figures, and if the insufficiency calculated in the first figure is *less* than the insufficiency calculated in the second figure, then there exists an impermissible preference, and the creditor must return the difference to the bankruptcy estate.

■ Applying the foregoing formula to this case, the Court finds that no preference under § 553(b) exists. The facts of this case show that at a minimum Thirty Thousand Nine Hundred Eighty-four and 95/100 Dollars ($30,984.95) was due and owing to the Bank on the day on which the setoff occurred. At this same time, the Bank owed the Debtor Nineteen Thousand Three Hundred Fifteen and 54/100 Dollars ($19,315.54) from the checking accounts the Debtor maintained with the Bank. Thus, pursuant to the first step of the formula, the Bank's insufficiency, on the date in which the setoff occurred, was at least Eleven Thousand Six Hundred Sixty-nine and 41/100 Dollars ($11,669.41). By comparison, the second step of the formula, which requires the insufficiency be computed from the 90th day prior to the debtor's bankruptcy filing, will yield precisely the same figure because the Bank's setoff, as computed in the first step of the analysis, also occurred on the 90th day prior to the Debtor's bankruptcy filing. Consequently, as both insufficiency figures are exactly the same, there is no preference pursuant to § 553(b)(1).

■ The Trustee, however, argues that the mere fact that the Bank's setoff occurred exactly 90 days prior to the Debtor's voluntary bankruptcy petition, should

in itself allow this Court to find that a preference exists. In essence, the Trustee asserts that any setoff which occurs on or within the 90 day period immediately prior to the Debtor's bankruptcy filing should be adjudged to be a per se preference as is done under § 547(b). Notwithstanding, the foregoing argument, this Court declines to manipulate the foregoing results obtained in § 553(b) so as to find that an "insufficiency" exists when none is actually present. As the court in *Assiante v. Davisville Credit Union* stated, "the language [of § 553(b) ] is specific, its application is mathematical, and we do not view it to be susceptible to equitable treatment." 28 B.R. 903, 905 (Bankr.D.R.I.1983); *see also In re R.C.I Enterprises Inc.*, 22 B.R. 549, 551 (Bankr.S.D.Fla.1982). However, this does not imply that all prepetition setoffs that occur exactly 90 days prior to the debtor filing for bankruptcy will by definition not be preferential under § 553(b) as the Bank asserts in its Summary Judgment Motion. As will be discussed later, this Court has the power to disallow setoff claims when the interests of justice so require. For example, if a debtor were to make a very large bank deposit on the 90th day immediately preceding its bankruptcy filing, and if on that very same day a bank exercised its right of setoff against that debtor's account(s), then the Court, depending on other circumstances present in the case, may deem it appropriate to disallow the bank's claim of setoff on the basis that it is inequitable to the debtor's other creditors.

## PREFERENTIAL TRANSFER UNDER § 547

■ The second rationale the Trustee puts forth to recover the Bank's prepetition setoff is that such an action allowed the Bank to receive a preference under § 547 of the Bankruptcy Code. (Section 547 is the general preference section of the Bankruptcy Code, and allows the acting Trustee to recover any prepetition transfer of the insolvent debtor's property which

occurs on or within 90 days immediately prior to the debtor filing for bankruptcy, and which is made on account of an antecedent debt.) However, this argument will only have merit if § 553, which governs setoffs in bankruptcy and which was partially discussed in the previous section, is ascertained to be inapplicable. This is because it is abundantly clear that when § 553 is determined to be applicable, § 547 cannot thereafter be utilized to undo its effect. *In re Lott,* 79 B.R. 869, 870 (Bankr.W.D.Mo.1987); In re Morgan, 77 B.R. 81, 84 (Bankr.S.D.Miss.1987); *In re Centolella,* 142 B.R. 624; *In re Voight,* 24 B.R. 983, 987 (Bankr.N.D.Tex.1982); *In re Lee Way Holding Co.,* 105 B.R. 404, 416 (Bankr.S.D.Ohio 1989).

 The rationale behind this premise is as follows: First, the statutory language of § 547(b) states that it only applies to "transfers," and under the Bankruptcy Code, a setoff is not included within the definition of a transfer. § 101(54).[3] Second, even if a setoff could be considered a transfer under § 101(54), a valid prepetition setoff will not have a preferential effect for purposes of a § 547(b) analysis. This conclusion is based on the fact that since prepetition transfers made to fully secured creditors have no preferential effect, a prepetition setoff will likewise have no preferential effect since § 506(a) provides that a claim subject to setoff under § 553 is a secured claim "to the extent of the amount subject to setoff."[4] *See generally, Mason and Dixon Lines,* 65 B.R. 973, 977 (Bankr. M.D.N.C.1986); *In re Santoro,* 32 B.R. 947, 950 (Bankr.S.D.N.Y.1983); *In re Lill,* 116 B.R. 543, 549 (Bankr.N.D.Ohio 1990); *In re Hatfield Elec. Co.,* 91 B.R. 782, 786 (Bankr.N.D.Ohio 1988); *In re Southwest*

*Equipment Rental, Inc.,* 137 B.R. 263, 269 (Bankr.E.D.Tenn.1992); 4 Collier on Bankruptcy § 506.03[4][a] (15th ed.1998). The final rationale behind this premise is that the language of § 553(a) which states:

> [e]xcept as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

Thus, a plain reading of this language denotes that where a right of setoff is established § 553, rather than § 547, governs the creditor's rights. *Lee v. Schweiker,* 739 F.2d 870, 873 (3rd Cir.1984) (citing *F.D.I.C. v. Bank of America,* 701 F.2d 831, 836 (9th Cir.1983)). Consequently, the question now becomes whether the Bank has complied with the statutory elements of § 553. If the Bank has, then the Trustee will be precluded from recovering the Bank's prepetition setoff as a preference under § 547. On the other hand, if the elements of § 553 have not been complied with by the Bank, then an examination of § 547(b) will have to be undertaken to determine if the Bank's prepetition setoff had a preferential effect. *See, e.g., In re Bohlen Enterprises, Ltd.,* 859 F.2d 561 (8th Cir.1988); *In re Lee Way Holding Co.,* 105 B.R. 404, 416 (Bankr.S.D.Ohio 1989); *In re Kittrell,* 115 B.R. 873, 881–83 (Bankr.M.D.N.C.1990).

 Section 553 of the United States Bankruptcy Code requires that a creditor establish the following four elements to

---

**3.** Transfer means, "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54)

**4.** Section 506 of the Bankruptcy Code states that, "[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest, or this is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be . . . ."

have its setoff recognized under Bankruptcy Law:

the creditor holds a claim against the debtor that arose before the commencement of the case;

the creditor owes a debt to the debtor that arose before the commencement of the case;

the claim and debt are each mutual;

the creditor has a right to setoff under nonbankruptcy law.

See *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19, 116 S.Ct. 286, 289, 133 L.Ed.2d 258, 262 (1995) (Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.); *In re Morristown Lincoln–Mercury, Inc.*, 42 B.R. 413, 416 (Bankr.E.D.Tenn.1984); 4 Collier on Bankruptcy § 553.01(1), at 553–7 (15th ed.1998). In addition, as the doctrine of setoff is an affirmative defense, it must be proven by the party asserting it. *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp. II*, 763 F.2d 188, 190 (6th Cir.1985); *Pester Refining Co. v. Mapco Gas Prods., Inc.*, 845 F.2d 1476, 1486 (8th Cir.1988). Thus, the Bank has the burden of proof with respect to the above elements.

In the present case, there is no doubt that elements one and two are met, as the Bank's claim and the Debtor's debt clearly arose before the commencement of the Debtor's bankruptcy case. In addition, there are no real issues, pursuant to element three, regarding whether the claim and debt between the Parties are mutual; meaning that the underlying transactions were between the same parties standing in their same capacity. *See e.g., In re Sentinel Prods. Corp., P.I., Inc.*, 192 B.R. 41, 45 (N.D.N.Y.1996) (quoting *Modern Settings Inc. v. Prudential–Bache Securities, Inc.*, 936 F.2d 640, 648 (2nd Cir.1991)). Thus, the Court must only ascertain whether the Bank had a valid right under nonbankruptcy law to setoff the Debtor's checking accounts.

Section 553 of the Bankruptcy Code does not in itself create any right of setoff. Rather, the Section merely recognizes and preserves setoff rights which exist under applicable state law. 4 Collier on Bankruptcy § 553.01(2), at 553–8 (15th ed.1998). In the instant case, the transaction giving rise to this proceeding clearly took place in Ohio, thus Ohio law is applicable. *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (holding "[p]roperty interest are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Under Ohio law, a bank's right to setoff a depositor's account exists both in equity and at law, and generally requires that the following elements be present:

A valid Debtor/Creditor relationship must exist;

Mutuality between the parties;

The debt has matured unless the debtor is insolvent;

The amount owed must be liquidated.

*Walter v. Nat'l City Bank of Cleveland*, 42 Ohio St.2d 524, 526, 330 N.E.2d 425, 427 (1975) (citing *Witham v. South Side Bldg. & Loan Assn. of Lima*, 133 Ohio St. 560, 562, 15 N.E.2d 149 (1938)); *Walter v. National City Bank*, 42 Ohio St.2d 524, 330 N.E.2d 425 (1975); *Queen City Petroleum Products Co. v. Norwood–Hyde Park Bank & Trust Co.*, 49 Ohio App. 397, 197 N.E. 357 (1934), *BancOhio Nat'l Bank v. Matar*, 30 Ohio App.3d 148, 506 N.E.2d 1221 (1986). Based upon the facts presented to the Court, the Court finds for the following reasons that, even when viewing things in the light most favorable to the Trustee, and giving him the benefit of all reasonable inferences, the Bank has met its burden of demonstrating that the foregoing elements have been met.

First, there is nothing before the Court to indicate that the contractual relationship between the Parties was somehow invalid. Thus, there existed at the time of the setoff a valid Debtor/Creditor relationship. Second, for the reasons previously enumerated, mutuality existed between the Parties. Third, after the Debtor defaulted on the promissory note, the full amount of the note, became immediately due pursuant to the acceleration clause contained in Paragraph 3 of the Parties' agreement. Hence, at the time the setoff occurred the debt had matured, meaning that it was presently due and collectible pursuant to the contract made between the parties. *Walter v. Nat'l City Bank of Cleveland,* 42 Ohio St.2d 524, 330 N.E.2d 425 (1975). Finally, the amount owed by the Parties was liquidated in that the respective Parties' debts could be computed with certainty (i.e., the Parties have not disputed the amounts due and owing). Consequently, the Bank had a valid right under Ohio law to setoff the Debtor's checking accounts. Accordingly, the Court finds that § 553 governs the relationship between the Litigants, and thus no preferential transfer exists under § 547 of the Bankruptcy Code.

## EQUITABLE CONSIDERATIONS

▇▇▇ The Trustee, however, contends that even if no preferential transfer exists under either § 553(b) or § 547(b), bankruptcy courts still have the power to fashion an outcome so as to reach a fair and equitable result. The Court agrees with the Trustee's statement. Clearly, a bankruptcy court, being itself a court of equity, has the power to fashion an equitable principle such as the setoff doctrine so as to reach a just result. 11 U.S.C. § 105(a); *United States v. Energy Resources Co. Inc.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); *In re Southern Indus. Banking Corp.,* 809 F.2d 329, 332 (6th Cir.1987) (the application of setoff

lies within the equitable discretion of the trial court); *United States v. Norton,* 717 F.2d 767, 772 (3rd Cir.1983); *In re Owens–Peterson,* 39 B.R. 186, 190 (Bankr.N.D.Ga. 1984). However, a bankruptcy court must exercise its equitable powers within the confines of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206–207, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988). Thus, a bankruptcy court's equitable powers, in a proceeding concerning the setoff doctrine, generally only involve determining whether the actual application of setoff is permissive. *In re Southern Indus. Banking Corp.,* 809 F.2d at 332. In other words, the Court may determine whether to reduce, postpone or entirely deny a creditor's right of setoff if its application would be unjust or in violation of public policy. *Id.* For example, a bankruptcy court may avoid an otherwise valid setoff when the facts of the case exhibit sufficiently egregious circumstances, such as when a bank and a debtor collaborate to harm the debtor's other creditors. *See Small Business Admin. v. Rinehart,* 887 F.2d 165 (8th Cir.1989).

▇▇▇ The Trustee has put forth two legal arguments, which the following will examine, in support of his position that allowing the Bank to retain its prepetition setoff of the Debtor's bank accounts would be prejudicial, thus meriting the invocation of this Court's equitable powers pursuant to § 105(a) [5]. In evaluating these arguments, this Court will take into consideration the following two principles: First it is the Trustee who bears the burden of proving that the application of this Court's equitable powers is appropriate. *Clark v. Internal Revenue Service,* 184 B.R. 728 (Bankr.N.D.Tex.1995); *Turner v. Internal Revenue Service,* 195 B.R. 476, 492 (Bankr. N.D.Ala.1996). Second, as there is a judicial presumption favoring the allowance of setoff, absent compelling circumstances, a bankruptcy court should generally allow a creditor to exercise such a right. *In re*

---

**5.** Section 105(a) provides, inter alia, that, "[t]he court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title."

*Inslaw, Inc.*, 81 B.R. 169, 170 (Bankr. D.D.C.1987); *In re IML Freight, Inc.*, 65 B.R. 788, 792 (Bankr.D.Utah 1986).

The Trustee's first basis asserts that if the Debtor is permitted to retain the monies it setoff against the Debtor's accounts, its position vis-a-vis the other creditors will be unfairly enhanced, and this goes against the public policy behind the Bankruptcy Code, which is to treat all creditors equally. However, this statement is not entirely correct. It is, of course, true that a setoff by its very nature allows such a creditor to receive a preference against the other creditors. However, when Congress first established the Bankruptcy Code it decided that certain classes of creditors merited a distribution of the debtor's assets over other classes of creditors. Therefore, the Bankruptcy Code's aim was only to treat creditors within a prescribed hierarchy of classes equally; not to treat all creditors equally.

Moreover, in establishing the hierarchy of classes, Congress bestowed upon creditors having a valid right of setoff, the status of an allowed secured claim, thus giving that creditor the highest priority under the Bankruptcy Code. § 506(a).[6] The policy reason for doing this was the belief that if a creditor's setoff rights were not preserved in bankruptcy, creditors might be more inclined to exercise a right of setoff under nonbankruptcy law at an earlier stage in the Debtor financial affairs, thus hastening the debtor's financial collapse. 4 Collier on Bankruptcy § 553.02[2], at 553–9 (15th ed.1998). Accordingly, based upon the legitimate public policy basis for allowing creditors with a right of setoff to retain those rights in bankruptcy, this Court will not invoke its equitable powers to avoid the Bank's prepetition setoff solely on the basis that it is unfair to the other creditors.

**6.** Allowed secured claims are always entitled to receive the return of their collateral, or the fair market value thereof. *United States v. Darnell*, 834 F.2d 1263, 1265 (6th Cir.1987);

The Trustee's second basis for asking this Court to invoke its equitable powers, so as to have the Bank's prepetition setoff set aside, is founded on the fact that an "insider" relationship existed between the Bank and the Debtor. The Court agrees with the Trustee that the existence of an "insider" relationship between the Debtor and the Bank makes their activities subject to closer scrutiny than what otherwise would have been called for. Nevertheless, the mere fact that an "insider" relationship may have existed between the Parties is not in itself dispositive of the issue as to whether the Bank's prepetition setoff should be returned to the Debtor's bankruptcy estate. This conclusion is based upon the fact that absolutely nowhere in § 553, which the Court has already determined to be applicable, does it even mention the word "insider" as defined by the Bankruptcy Code under § 101(31). Hence, this Court must presume that Congress knew what it was doing when it omitted the word "insider" from § 553 of the Bankruptcy Code. Consequently, as the relevance of an "insider" relationship is considered immaterial under the Bankruptcy Code for purposes of prepetition setoffs, this Court will not exercise its equitable powers to void the Bank's setoff unless the facts and circumstances of this case are sufficiently egregious enough to warrant such an undertaking. *See e.g., Matter of Allbrand Appliance & Television Co., Inc.*, 16 B.R. 10, 14–15 (Bankr.S.D.N.Y.1980).

The facts of this case, at least as indicated to the Court, show that the Debtor stopped making payments on its promissory note sometime in April of 1997. However, after this time, but before the Bank setoff the Debtor's checking accounts, the Debtor continued to conduct some banking activity. Specifically, the Debtor, in the days leading up to the

*In re Lill*, 116 B.R. 543, 549 (Bankr.N.D.Ohio 1990); *In re Hatfield Elec. Co.*, 91 B.R. 782, 786 (Bkrtcy.N.D.Ohio 1988).

Bank's prepetition setoff, made deposits totaling Two Thousand Four Hundred Fifty-seven and 66/100 Dollars ($2,457.66), and made withdraws totaling One Hundred Eighty-seven and 50/100 Dollars ($187.50). In effect the Bank is Two Thousand Two Hundred Seventy and 16/100 Dollars ($2,270.16) for the better as a result of the Debtor's pre-setoff, but post-default, banking activities. Thus, it can be argued that the Bank and Debtor colluded to defraud the Debtor's other creditors.

Nonetheless, given the original size of the promissory note and the overall size of the Debtor's financial activities, a Two Thousand Two Hundred Seventy and 16/100 Dollar (2,270.16) improvement in the Bank's position is simply not enough to warrant a finding that the Bank and the Debtor were engaged in some type of collusive behavior to defraud or otherwise harm the Debtor's other creditors. Reinforcing this view is the fact that the last banking activities the Debtor conducted before the Bank setoff the Debtor's checking accounts involved the withdrawal of funds, which actually harmed the Bank's overall financial position. Consequently, this Court holds that there is insufficient evidence before it to make a finding that sufficiently egregious enough circumstances exist to warrant the application of this Court's equitable powers to avoid the prepetition setoff made by the Bank.[7] Accordingly, the Trustee's request to set aside the Bank's prepetition transfer on the basis of equitable considerations is rejected.

### TRUSTEE'S CLAIM OF CONVERSION

Conversion is an act which wrongfully exercises dominion and control over another person's property. *Miller v. Uhl*, 37 Ohio App. 276, 174 N.E. 591 (1929); *McGraw v. Jordan*, 47 B.R. 712

(Bankr.N.D.Ohio 1985); *Bear v. Colonial Finance Co.*, 42 Ohio App. 482, 182 N.E. 521 (1932). Thus, an action for conversion does not ordinarily exist when a party with a legal right to take possession of a person's property does so. In the case sub judice, the Court has already found, for the reasons recited in the foregoing section, that the Bank rightfully exercised its right of setoff against the Debtor's checking accounts. Accordingly, the Bank's actions were not wrongful, and thus the Court holds that no action for conversion exists. *National Equipment & Mold Corporation v. Metropolitan Bank of Lima*, 64 B.R. 239 (Bankr.N.D.Ohio 1986); *Cincinnati Bar Assn. v. White*, 79 Ohio St.3d 491, 493, 684 N.E.2d 29, 30–31 (1997).

### SUMMARY

In conclusion, the Court finds that the setoff at issue was not preferential pursuant to § 553(b), as the Bank did not improve its position by the prepetition setoff of the Debtor's accounts during the 90 days immediately preceding the Debtor's bankruptcy petition. Similarly, no preferential transfer took place under § 547(b) because this section was not germane to this proceeding in light of § 553 being applicable. In addition, the Court does not consider the facts and circumstances present in this case to be of the type that would require this Court to invoke its equitable powers. Finally, based upon the Courts finding that the Bank rightfully setoff the Debtor's bank accounts, the Court rejects the Trustee's claim of conversion. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

---

**7.** The Trustee has also asserted that the Bank resided on the Financial Committee of the Debtor, and retained an agent as a member of the Debtor's Board of Directors. No evidence has been presented supporting or disputing this contention. However, as the Court has found that the mere existence of an "insider" relationship is not alone sufficient to set aside the Bank's prepetition setoff, the ascertainment of these issues is not of consequence.

ORDERED that the Motion for Summary Judgment of Bruce C. French, Trustee, be, and is hereby, DENIED.

It is **FURTHER ORDERED** that the Motion for Summary Judgment of Bank One, Lima N.A. be, and is hereby, GRANTED.

It is **FURTHER ORDERED** that Bank One, Lima N.A. be permitted to retain free from the claims of the Bankruptcy Trustee, the monies it setoff against the Bank accounts of Rehab Projects, Inc.