WALTER, APPELLEE, *v.* THE NATIONAL CITY BANK OF
CLEVELAND, APPELLANT.

[Cite as Walter v. National City Bank (1975),
42 Ohio St. 2d 524.]

(No. 74-825—Decided June 25, 1975.)

*Mr. Gary B. Kabat,* for appellee.
*Mr. Craig W. Smith,* for appellant.

Stern, J. The appellant bank' claims a right of equitable setoff of an unmatured indebtedness of its depositor, as against a judgment creditor seeking to reach the depositor's account by an order in aid of execution. Appellant concedes that it has no statutory right of setoff under R. C. 2309.19.

Setoff, both at law and in equity, is that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction. *Witham* v. *South Side Bldg & Loan Assn. of Lima* (1938), 133 Ohio St. 560, 562, 15 N. E. 2d 149.

As a general rule, the courts have held that a bank may set off a bank account against the matured indebtedness of its depositor, although the bank has been garnisheed at the instance of a creditor of the depositor. *Schuler* v. *Israel* (1887), 120 U. S. 506; *Bennett* v. *Campbell*

526

(1899), 189 Pa. 647, 42 A. 373; Annotation, 106 A. L. R. 62. In *Bank* v. *Brewing Co.* (1893), 50 Ohio St. 151, 33 N E. 1054, it was held that a bank could set off the amount of an insolvent depositor's checking account against an unpaid and overdue note, without the knowledge or consent of the depositor, and that the bank could refuse payment of a check drawn on the account. The theory of these cases is that a bank stands in the relationship of debtor to its depositor, and has the right to apply the deposit to payment of the depositor's matured debts or obligations held by the bank, in the same way that another debtor might assert setoff as a defense to an action on the debt. *Holloway* v. *First Natl. Bank of Pocatello* (1928), 45 Idaho 746, 265 P. 699.

In fact, the exercise of setoff by a bank is often quite different from the case of a usual debtor-creditor relationship. A bank account is a debt, but one which is ordinarily subject to demand withdrawal at any time, and one which imposes clear responsibilities upon the bank depending upon the nature of the account. Historically, the bank's right to setoff derives from the bank lien of the law merchant, and that right still possesses some of the characteristics of a lien, since it permits the bank by self-help to take priority over others claiming a right to the funds on deposit.[1] Whereas, in the case of an ordinary debtor, setoff

[1] "It is said to be a well settled rule of the law merchant, that a bank has a general lien on all the funds of a depositor in its possession for any balance due on general account, or other indebtedness contracted in the course of their dealings, and may appropriate the funds to the payment of such indebtedness. The right to make such appropriation, it is held, grows out of the relation of the parties as debtor and creditor, and rests upon the principle, that 'as the depositor is indebted to the bank upon a demand which is due, the funds in its possession may properly and justly be applied in payment of such debt, and it has therefore a right to retain such funds until payment is actually made.' *Falkland* v. *Bank*, 84 N. Y. 145. Though this right is called a lien, strictly it is not, when applied to a general deposit; for, a person cannot have a lien upon his own property, but only on that of another; and, as we have seen, the funds on general deposit in a bank, are the

is available as an equitable and statutory defense, in the case of a bank, setoff becomes a means by which the bank, because of its position as a commercial middleman, acquires a priority of right whenever it acts as creditor for a depositor.

The courts have generally held that the bank does not have a priority of right in equity where the bank seeks to set off an unmatured indebtedness. *United Bank & Trust Co.* v. *Washburn & Condon* (1930), 37 Ariz. 223, 292 P. 1025; *Gerseta Corporation* v. *Equitable Trust Co. of New York* (1926), 241 N. Y. 418, 150 N. E. 501; *Stockyards Nat. Bank* v. *Presnall* (1917), 109 Tex. 32, 194 S. W. 384. Cf. *Valley National Bank of Arizona* v. *Hasper* (1967), 6 Ariz. App. 376, 432 P. 2d 924. An unmatured debt is not presently due or collectible and is not available for setoff, since setoff would alter the contract made by the parties.

An exception to this rule has been made in cases where the depositor is insolvent. In *Schuler* v. *Israel, supra* (120 U. S. 506), the court noted that a defense in equity was available to a bank-debtor to prevent an insolvent depositor-creditor from obtaining payment of his debt, where an unmatured obligation was available as setoff and would be lost due to the insolvency.

The same equities do not apply in the case at bar. Here, the negotiation of a 90-day promissory note to Ritzer occurred after the date upon which, the bank itself asserts, Ritzer's balance sheet showed the company to be insolvent. In sum, the bank made a loan for a definite term to an insolvent depositor, and now claims that as a matter of equity it is entitled to priority of right to its depositor's account because of the insolvency. We disagree. The extension of

property of the bank. Properly speaking, the right, in such case, is that of set-off, arising from the existence of mutual demands. The practical effect, however, is the same. The cross demands are satisfied so far as they are equal, leaving whatever balance that may be due on either, as the true amount of the indebtedness from the one party to the other." *Bank* v. *Brewing Co.* (1893), 50 Ohio St. 151, 158-59, 33 N. E. 1054.

credit to an insolvent was a voluntary act, whether negligent or merely lacking in sound banking practice. In the present case, no equity appears which would require granting priority to the bank's unmatured obligation over the judgment of the appellee.[2]

Lack of maturity is not always permitted to defeat the right of setoff where that right is the only way to prevent clear injustice, and the courts have frequently applied equitable principles in cases of insolvency. "Where insolvency has intervened, a court will not be limited to a strict application of statutory set-off but will apply the doctrines of equity." *Union Properties* v. *Baldwin Brothers Co.* (1943), 141 Ohio St. 303, 47 N. E. 2d 983 (paragraph nine of the syllabus). But no equity accrues where insolvency did not "intervene" but occurred prior to the voluntary granting of the loan sought to be set off.

The bank also claims a contractual right of setoff based upon its rules and regulations. These rules read, in part:

" * * * Bank also reserves the right to apply any balance in the account to the payment of any indebtedness, direct or indirect, absolute or contingent, due or to become due and howsoever evidenced, of depositor to bank."

The signature card, signed by the corporate officers of Ritzer in 1969, states that the "depositor acknowledges receipt of a copy of the rules and regulations * * *relative to commercial accounts and agrees to be bound thereby and by any amendments and additions thereto hereafter made." The bank's claim is, in effect, that it could at any time ap-

---

[2] A banker's right of setoff also raises new equitable questions in situations where the bank may have several types of accounts with a depositor, including savings passbook, checking, and long-term certificates of deposit, and may also be a creditor for mortgage, installment loan, credit card, and other forms of indebtedness. It has been suggested that the setoff of a customer's indebtedness without notice or regard to his protests is inequitable and in conflict with due process and legislation protecting consumers' rights. Comment, Banking Setoff: A Study in Commercial Obsolescence, 23 Hastings L. J. 1585. See, also, Olsen, The Appropriation of Deposits for Debts: Levies, Liens, and Setoffs. 90 Banking Law J. 827 (1973).

ply any part of the funds deposited in the commercial account to the payment of the 90-day promissory note, even before the note was due, and that the garnisheeing creditor stands in the shoes of the depositor.

The 90-day promissory note executed by Ritzer in favor of the bank contains no statement that it was made upon the security of the commercial account, and contains no provision for acceleration, other than for lack of performance by the debtor. The note was secured by a security agreement in machinery and equipment[2], but no security agreement was made with respect to the commercial account.

If the language of the bank's rules and regulations is taken to mean that the bank could at any time apply the balance of the commercial account to the promissory note, those rules are in direct conflict with the contract embodied in that note. They would have the effect of converting a note payable at a definite time to one payable on demand. In this case, the later, specific terms of the promissory note control over the general language of the rules. The primary intent of the parties in executing the 90-day note was that it become due in 90 days, not upon demand, and to the extent that the earlier, general language of the rules conflicts with that intent, it must be taken to have been superseded. See 3 Corbin on Contracts, 172-178, Section 547; 4 Williston on Contracts (3 Ed.), 816, 822, Section 624.

" * * * [I]n the construction of any written instrument the primary duty of the court is to determine and give effect to the intention of the parties." *United States Fire Ins. Co.* v. *Phil-Mar Corporation* (1956), 166 Ohio St. 85, 87, 139 N. E. 2d 330.

The contract embodied in the promissory note was that the debt would become due and payable in 90 days, and

---

[2]That agreement defines "liabilities" in almost the exact terms of the rules and regulations, to include "indebtedness * * * due or to become due * * *." It is clear that under a security agreement the rights of a secured party to enforce his security interest do not accrue until after default by the debtor. R. C. 1309.44.

530

the bank had no contractual right to treat the note as a demand note and set off the commercial account against that debt before maturity.

For the foregoing reasons, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

O'Neill, C. J., Herbert, Corrigan, Celebrezze and W. Brown, JJ., concur.

P. Brown, J., dissents.