OPINION
On appeal appellant sets forth the following two assignments of error:
"FIRST ASSIGNMENT OF ERROR
 "THE COURT ERRED IN HOLDING THAT APPELLANT, J B TOMATO WAIVED ITS RIGHT TO SETOFF.
"SECOND ASSIGNMENT OF ERROR
 "THE COURT ERRED IN HOLDING THAT THE AMOUNT OF THE CREDIT APPELLANT, J B TOMATO, MUST DEPOSIT INTO COURT IS $365,834.24."
The facts that are relevant to the issues raised on appeal are as follows. J B is a tomato packing and marketing company in Oak Harbor, Ohio, which was originally formed as a partnership between appellees and the Jones brothers. Sometime in early 1994, appellees agreed to sell their interest in J B to the Jones brothers. Pursuant to the agreement, the Jones brothers were to make yearly installment payments to appellees. Several years after the agreement was signed, the Jones brothers stopped making regular payments, and appellees ultimately obtained a judgment against them in the amount of $512,000.
On December 11, 1997, appellees filed motions for orders of garnishment of property other than personal earnings against J B, pursuant to R.C. 2716.11. In support thereof, appellees attached affidavits in which they stated that J B was in possession of "[m]onies collected for, owed to or payable to" Phillip and Charles Jones. On December 12, 1997, the trial court served notices of the garnishments on J B in which it ordered J B to file answers stating whether it had in its possession any "money, property or credits" belonging to Phillip or Charles Jones.
On December 24, 1997, J B's accountant, Larry Leow, filed answers in which he stated that the company had no money, property or credits belonging to either Phillip or Charles Jones. On February 2, 1998, appellees filed a "notice of Special Exami nation of Appellant/Garnishee J B Tomato, Inc." The parties subsequently arranged for the examination to take place on February 27, 1998. On that date, J B's attorney appeared and turned over certain documents to appellees' attorney. On March 16, 1998, appellees filed a "Motion to Require Garnishee to Show Cause Why It Should Not Be Held in Contempt" for not producing witnesses for the February 27, 1998 special examination. On April 30, 1998, a show cause hearing was held before the trial court.
Leow testified at the hearing that, at that time, the Jones brothers were the sole shareholders of J B and of Jones Farms, a tomato farming operation which does business with J B. He explained that each year J B purchases tomato plants and other supplies used to grow tomatoes and provides them to Jones Farms.[1] The cost of the supplies is then billed to the Jones Farms account. At the end of the tomato growing season, J 
B packs and sells Jones Farms' tomatoes and credits Jones Farms in a separate account for the amount obtained from the sale. On December 31 of each year the accounts are balanced, and any remaining credits or debits are carried into the next year.
Leow further testified that the amount of Jones Farms' credit on the day the notice of garnishment was served was $245,794.53 and that several days later the credit had risen to $365,834.24; however, Phillip Jones and the company's attorney had told him to answer that the account had a "net credit" of $0 as of December 24, 1997.
Leow stated that he gave Phillip Jones a "series" of checks on December 23, 1997, and that Jones had written only one check, in the amount of $3,036.25, before J B's answer was filed in the trial court on December 24, 1997.
Leow further stated that the Jones brothers could write checks on their J B credit account at any time, as long as the company had enough money in the bank to cover the checks, and that in December 1997, J B had only $80,000 in its bank account.
The account ledgers for J B, which were filed as exhibits at the hearing, show that between December 23, 1997 and December 31, 1997, checks were written on Jones Farms' credit account which totaled $109,588.86. The ledger further shows that on December 31, 1997, Leow applied the remaining $256,094.54 in the credit account to Jones Farms' outstanding debt, leaving a balance of $0 in the credit account and a remaining debt to J B of approximately $160,000.
J B's attorney argued at the hearing that while Jones Farms had a credit of $365,834.24 with J B on the date the answers were filed, the company had a right to set off the credit against Jones Farms' outstanding debt of more than $400,000.
On May 12, 1998, the trial court filed a judgment entry in which it found that the amount of Jones Farms' credit should be calculated as of the date J B's answers were filed with the clerk of courts. The trial court further found that, even assuming that J B had the right to set off Jones Farms' credit against its outstanding debt, the company waived its right when it allowed Phillip Jones to write checks on the credit account after the notices of garnishment were served. Accordingly, the trial court ordered J B to deposit credits in the amount of $365,834.24 with the clerk of courts. On June 10, 1998, a timely notice of appeal was filed.
Appellant asserts in its first assignment of error that the trial court erred when it found that J B waived its right to set off the credits against Jones Farms' outstanding debt. Appellant argues in support thereof that the evidence does not support the finding of a waiver, because only one check for $3,026.25 "could even arguably have been written during the garnishment action." Appellant further argues that, as a matter of law, the writing of only one check for such a "minimal amount" by Phillip Jones does not constitute a waiver of J B's right of set-off.
Set-off is a self-help remedy which is a form of "extrajudicial attachment." Daugherty v. Central Trust Co.
(1986), 28 Ohio St.3d 441, 449. The Supreme Court of Ohio has defined set-off as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." Walter v. Bank (1975), 42 Ohio St.2d 524, 525.
In the case of an ordinary debtor-creditor relation ship, set-off is available only as "an equitable and statutory defense" between the two parties. Id., at 526-527. In contrast, a bank may set-off a bank account in its possession against the matured indebtedness of its depositor, even after it has been garnisheed by a creditor of that depositor. Id., citing Schulerv. Israel (1887), 120 U.S. 506. The bank's common-law right to set-off derives from the fact that "`as the depositor is indebted to the bank upon a demand which is due, the funds in [the bank's] possession may properly and justly be applied in payment of such debt, and it has therefore a right to retain such funds until payment is actually made.'" Walter, supra, at 526, n. 1.
It is undisputed in this case that appellant is not a bank and does not function as a bank in its relationship with either Jones Farms or the Jones brothers.
Upon consideration of the foregoing, this court finds that, as an ordinary business creditor, appellant is not entitled to exercise the equitable right of set-off to defeat a garnish ment action brought by appellees, who are third-party judgment creditors. Accordingly, appellant's first assignment of error not well-taken.[2]
Appellant asserts in its second assignment of error that the trial court erred by ordering J B to deposit a credit in the amount of $365,834.24 with the clerk of courts. In support thereof, appellant argues that, pursuant to R.C. 2716.21(B) and (D), "the credit should only be for $245,794.53, which represents the amount of the credit on the date the garnishment was served."
Appellees respond that the trial court correctly ordered J B to deposit $365,834.24 in credits with the clerk of courts, in reliance on McKinney, Inc. v. Wyman Corp. (1995),102 Ohio App.3d 648.
In McKinney, supra, the Cuyahoga County Court of Appeals stated that "[t]he law in Ohio is that the garnishment order attaches to all property that comes into the hands of the garnishee from the date of service, up to the date the garnishee files its answer with the clerk of courts." Id. at 652. In its decision, the McKinney court relied on the reasoning expressed inDiamond Savings Loan Co. v. Hoisington (Sept. 12, 1989), Franklin App. No. 88AP-976, unreported, and Hoover v. Professional Executive Mtg. Corp. (1985), 21 Ohio App.3d 223.
In Hoisington, supra, the Franklin County Court of Appeals interpreted R.C. 2716.13(B) and R.C. 2716.21(D) to mean that "the garnishee must report to the court any property, * * * which he has at the time the answer is filed with the court." At that time, those statutes provided that a garnishee is liable for any money, property, or credits in its possession or under its control "from the time of service of the order * * *." (Emphasis added.)
Similarly, in Hoover, supra, the Lorain County Court of Appeals held that a garnishee was required to pay money to the court "when the funds became available," which in that case was after the answer was filed. Id. at 225. The Hoover court based its decision on R.C. 2716.21(B), which stated that the garnishee may be ordered to deposit with the trial court any money, prop erty, or credits of the defendant if "it is discovered that at orafter the service of the notice upon the garnishee, he possessed any money, property, or credits of the defendant * * *." Id. at 224-225. (Emphasis added.)
Upon review thereof, however, this court finds that the law on which the appellate courts' decisions in McKinney,Hoisington and Hoover were based has been changed. R.C.2716.13(B), which governs the filing of a notice of garnishment, and R.C. 2716.21(B) and R.C. 2716.21(D), which govern the filing of the garnishee's answer, were amended effective January 1, 1997. Those statutes now specifically provide that the amount of money, property, or credits in the possession or under the control of the garnishee is to be determined "at the time of service of thenotice of garnishment on the garnishee," and not at sometime thereafter. See R.C. 2716.13(B); R.C. 2716.21(B); and R.C.2716.21(D).
It is undisputed that the notices of garnishment were served on December 12, 1997, almost a full year after the appli cable statutes were amended. On that date, Jones Farms had a credit of $245,794.53 in its account with J B. The amount of the credit did not increase to $365,834.24 until several days later, around the time J B filed its answers with the clerk of courts.
Upon consideration of the foregoing, this court finds that the trial court erred as a matter of law when it ordered J B to deposit a credit of $365,834.24 with the clerk of courts. Accordingly, appellant's second assignment of error is well-taken.
Upon consideration whereof, this court finds that substantial justice has not been done the party complaining, and the judgment of the Ottawa County Court of Common Pleas is hereby affirmed in part and reversed in part. Pursuant to App.R. 12(B), we hereby render the judgment that should have been rendered by the trial court, and order appellant J B to deposit a credit in the amount of $245,794.53 with the Ottawa County Clerk of Courts. Court costs of this appeal are hereby assessed equally to appel lant and appellees.
 JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
 Melvin L. Resnick, J.
 James R. Sherck, J.
 Charles D. Abood, J.
CONCUR.
Judge Charles D. Abood, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.
[1] The record reflects that J B does business with more than one tomato farmer; however, the existence of a business relationship between J B and tomato farmers other than Jones Farms is not relevant to this appeal.
[2] Because the trial court did not consider the threshold issue of whether appellant had the right of set-off under the circumstances presented in this case, we need not determine whether the record contains sufficient evidence to support the trial court's finding that appellant waived its right to set-off.