OPINION
Appellants American Medical Security, Inc. ("AMS"), et al., appeal a $5.4 million judgment, in the Delaware County Court of Common Pleas, in favor of Appellees Health Administrators of America, Inc. and Charles F. Booher ("Booher"), et al., in an extensive breach of contract and fraud action based upon certain insurance agency and sales commission contractual arrangements. The relevant facts leading to this appeal are as follows.
Appellee Charles F. Booher is an officer of Health Administrators of America, Inc., and a licensed insurance agent. Prior to May 1, 1992, Booher owned a block of insurance business, with annual premiums of approximately $23 million, with the American Benefit Life Insurance Company ("ABL"), a corporation he had created in 1991. In 1992, AMS entered into an option agreement to purchase all outstanding stock of ABL. As a result, on May 1, 1992, Booher and Health Administrators of America, Inc. entered into a commission agreement with AMS, United Wisconsin Life Insurance Company ("UWLIC"), and American Medical Security Insurance Company ("AMSIC") to pay Booher commissions for existing business and for renewals on policy premiums, utilizing a sliding scale based on the "loss ratio" of the ABL block of business. (On May 14, 1993, the parties modified the loss ratio renewal commission provision of the commission agreement, such that payment would be made to Booher at a rate of eight percent, except where three percent would be added for association plans.) On May 5, 1992, several days after the original commission agreement, Booher entered into a general agent contract with AMS, which controlled commission payments he would receive as an individual entity for new, additional business. From May 1, 1992 until approximately August 30, 1996, appellants paid Booher renewal commissions on the block of ABL accounts in existence as of May 1, 1992, pursuant to the terms of the commission agreement.
The chain of events leading to the eventual litigation in this matter commenced in the spring of 1996, when Booher attempted to enroll a group of employees from Clear Creek Valley of Ohio, a foster care agency in Fairfield County. The group was rated "substandard" for insurance purposes, forcing a withdrawal of the application. Booher then allegedly resubmitted the Clear Creek employees as employees of Chrysler-Plymouth East, an automobile dealership which had originally been in the ABL block of accounts. AMS contacted Booher about the matter, but nonetheless became suspicious of Booher's handling of other accounts. Upon further investigation, AMS discovered what it alleged were improper billing practices and overcharging of policyholders by Booher.
On August 30, 1996, appellants notified Booher via letter that the agency relationships between them were terminated for cause. At approximately the same time, AMS ceased further renewal commissions to be paid pursuant to the commission agreement.
On September 9, 1996, AMS filed a complaint against Booher with the Ohio Department of Insurance, resulting in an investigation lasting approximately ten months. The Department of Insurance did not officially render a finding as to any wrongdoing or violation of law by Booher, but he was ordered to pay a fine of $4000 via a consent agreement.
On October 25, 1996, appellees, including Booher, filed an amended five-count action for breach of contract and fraud against Appellants AMS, UWLIC, and AMSIC. The complaint alleged breach of the aforesaid 1992 commission agreement, fraudulent misrepresentation of rate quotes and premium charges, and breach of agency, oral, and commission contracts.[1]
Appellees prayed for compensatory damages of over $9 million, plus punitive damages. All three appellants jointly answered the complaint on November 12, 1996.
On December 24, 1996, Booher filed a motion for summary judgment, alleging that he was entitled to judgment as a matter of law regarding breach of the commission agreement, as further discussed in regard to appellant's First and Second Assignments of Error, infra. The trial court granted appellee's motion for partial summary judgment on August 26, 1997. The summary judgment entry read in part that "* * * it is clear from the terms of the Commission Agreement that the parties did not intend to create a right of unilateral revocation." Judgment Entry, August 26, 1997, at 9. The trial court thereupon found that AMS had violated an express contractual provision by unilaterally terminating and refusing to pay Booher his commissions on the ABL block of business.
None of the parties requested a jury trial. The trial court judge referred the remaining issues to a magistrate for evidence. The magistrate heard evidence for a total of twelve days, commencing on January 25, 1999 and concluding on February 18, 1999. The magistrate took the matter under advisement and issued a decision on February 7, 2000. The decision granted judgment for damages to Booher in the amount of $3,023,754 in regard to Count I of the complaint (breach of commission agreement) and $2,405,543 in regard to Count III (breach of agent contract). In total, the award to Booher amounted to $5,429,297, representing the value of future commissions due on the renewal of group health insurance policies for the next sixteen years. Among the findings of the magistrate was the following assessment:
 Accordingly, while the Defendant [AMS] may be justifiably unhappy with Plaintiff's [Booher's] conduct, the contract * * * requires that termination for cause be supported by evidence that an agent engaged in fraudulent, illegal or dishonest activity adversely affecting the company; and violation of laws, regulations, or rules of the jurisdiction governing the agent's activity. The record simply does not support termination for cause under those terms.
Magistrate's Decision, February 7, 2000, at 8, emphasis sic.
Both parties filed objections to the magistrate's decision, but the trial judge overruled each and entered judgment on April 10, 2000. Appellants filed their notice of appeal on April 18, 2000. The appellees filed a notice of cross-appeal on May 4, 2000. Appellant's nine Assignments of Error are as follows:
 I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT AND FAILING TO REVISE ITS SUMMARY JUDGMENT IN LIGHT OF THE EVIDENCE CONCERNING BOOHER'S FRAUDULENT, ILLEGAL AND DISHONEST ACTS.
 II. THE TRIAL COURT ERRED IN FAILING TO REVISE ITS SUMMARY JUDGMENT IN LIGHT OF THE EVIDENCE CONCERNING THE AMENDMENT TO THE COMMISSION AGREEMENT.
 III. THE TRIAL COURT ERRED IN ITS CONSTRUCTION OF THE AGENT CONTRACT AND IN HOLDING THAT AMS COULD NOT TERMINATE THE CONTRACT "FOR CAUSE."
 IV. THE TRIAL COURT ERRED BY FAILING TO CONSTRUE AND APPLY THE TERMINATION PROVISIONS IN THE AGENT AGREEMENT AND BY TREATING ALL COMMISSIONS FOR BUSINESS WRITTEN AFTER MAY 1, 1992 AS BEING PAYABLE PURSUANT TO THE AGENT CONTRACT.
 V. THE TRIAL COURT ERRED BY GRANTING A JUDGMENT THAT IS INCONSISTENT WITH ITS EARLIER SUMMARY JUDGMENT AND THAT IS BASED ON AN ERRONEOUS CALCULATION.
 VI. THE TRIAL COURT ERRED BY GRANTING A JUDGMENT THAT INCLUDES AN 80% "RENEWAL BONUS" NOT PROVIDED FOR IN THE COMMISSION AGREEMENT.
 VII. THE TRIAL COURT ERRED BY GRANTING A JUDGMENT THAT INCLUDES A 7% COMMISSION ON THE UNION TEAMSTERS ACCOUNT AS TO WHICH THE COURT RULED AMS HAD NO FURTHER OBLIGATION.
 VIII. THE TRIAL COURT ERRED BY FAILING TO SUBTRACT (SIC) BOOHER'S DAMAGES THE EXPENSES HE SAVED IN NOT HAVING TO CONTINUE TO SERVICE THE BUSINESS.
 IX. THE TRIAL COURT'S JUDGMENT WAS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
Appellee raises the following two Assignments of Error on cross-appeal:
 I. THE TRIAL COURT ERRED IN CONCLUDING THAT THE PLAINTIFFS' CLAIM THAT THEY WERE FRAUDULENTLY INDUCED TO ENTER THE AGREEMENTS WITH AMS WAS BARRED BY SECTION 2305.09(C), REVISED CODE.
 II. THE TRIAL COURT ERRED IN HOLDING THAT THE PLACING OF THE UNION TEAMSTERS LOCAL GROUP 284 IN THE OHIO ALLIANCE ON JULY 1, 1995 MODIFIED THE PREVIOUS VERBAL AGREEMENT TO PAY 20% RENEWAL COMMISSIONS ON THAT GROUP.
 I.
In its first Assignment of Error, appellant argues that the trial court improperly granted partial summary judgment on August 26, 1997, and erred in failing to revise same following evidence at trial regarding the issue of Booher's alleged fraudulent acts. We disagree.
Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,36. As such, we must refer to Civ.R. 56 which provides, in pertinent part:
 Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
 * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.
Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. Vahila v. Hall (1997), 77 Ohio St.3d 421, 429, citing Dresher v.Burt (1996), 75 Ohio St.3d 280.
It is based upon this standard that we review appellant's first Assignment of Error.
On December 24, 1996, Booher filed a motion for summary judgment pertaining to Count One of the complaint, which alleged that appellant breached the Commission Agreement by failing to pay Booher his renewal commissions based upon premiums generated by the pre-existing ABL business. On August 26, 1997, the trial judge granted partial summary judgment in favor of Booher. The judge agreed that the Commission Agreement unambiguously prohibited unilateral termination, and that refusal by AMS to pay commissions would violate an express provision of the contract as a matter of law. The judge further found no genuine issue of material fact as to whether the alleged failure of Booher's consideration would excuse appellant's further performance, and no genuine issue of fact as to whether appellants would be entitled to recoup or set-off damages arising from the Agent Contract as against Booher's demanded commissions under the Commission Agreement. Thus, the court ordered appellant to pay Booher his commissions pursuant to the Commission Agreement of May 1, 1992, plus interest at the rate of ten percent per year.
Appellant contends that the court erred in concluding, (1) that appellant is not entitled to recoupment based on a finding that appellant's claim "does not rest upon the same transaction as [Booher's] claim;" (2) that appellant is not entitled to set-off its liability to its insureds against amounts due Booher, if any, based on the court's allegedly flawed reasoning that appellant's claims are unmatured and insufficiently supported by the evidence; and (3) that appellant is not excused from performance of the commission agreement by reason of failure of consideration.
 Recoupment
Appellant argues that the trial court erred in concluding the AMS claim "does not rest upon the same transaction as [Booher's] claim" and that AMS is thereby not entitled to recoupment. AMS maintains that the commission agreement and the agent contract were "part and parcel" of one essential transaction, and that one acts as an exhibit to the other.Recoupment is defined as a defense arising out of the same transaction as a plaintiff's claim, and which entitles the defendant to reduce the amount demanded, but only to the extent sufficient to satisfy the plaintiff's claim. Riley v. Montgomery (1984), 11 Ohio St.3d 75, 77. Furthermore:
 [Recoupment] * * * does not confess the indebtedness alleged in the complaint, as is understood by a setoff, but its proposition is that the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover. Cauffiel Machinery Co. v. Eastern Steel Metal Co. (1978) 59 Ohio App.2d 1, 6, quoting 20 American Jurisprudence 2d 235, Counterclaim, Recoupment, and Setoff, Section 11.
Upon review, we find no error in the trial court's conclusion that appellant's potential recoupment claim arose from Booher's post-1992 activities, especially his attempts to procure new business, and did not rest upon the same transaction, i.e., the distinct May 1, 1992 commission agreement for the existing block of business, as did Booher's claims.
 Setoff
Appellant cites as error the trial court's conclusion that appellant is not entitled to set-off its liability to its insureds against amounts due Booher, if any, based on the court's reasoning that appellant's claims are unmatured and insufficiently supported by the evidence.
In Witham v. South Side Building Loan Assn. (1938), 133 Ohio St. 560,562, the Ohio Supreme Court defined the right to setoff as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." Appellant admits that AMS' insureds have not yet filed suit for definitive reimbursement, but nonetheless urges us to apply setoff to its unmatured claims upon equitable principles, pursuant to Walter v. National City Bank (1975),42 Ohio St.2d 524 : "Setoff is not strictly limited by statute, and the courts can allow setoff upon equitable principles where necessary to prevent clear injustice." Id., at paragraph one of the syllabus. However, the exception to the rule against setoff of unmatured debt, which is discussed in Walter, pertained to situations where the debtor or depositor is insolvent. Cf. Schuler v. Israel (1887), 120 U.S. 506. Appellant cites no precedent for the applicability of equitable setoff to the circumstances sub judice, and its arguments do not avail.
 Consideration
Appellants additionally contend that the trial court incorrectly concluded that AMS is not excused from performance of the commission agreement based on failure of consideration. Appellant notes that as every contract imposes a duty of good faith in performance, AMS' performance is excused by Booher's alleged breach of said duty. However, as the trial court properly held, the evidence did not affirmatively demonstrate that Booher failed to perform any promise made in support of the commission agreement, i.e., the obligation to enroll the pre-existing ABL groups as premium-paying insureds with AMS in 1992.
Therefore, we hold that the trial court did not improperly grant partial summary judgment, even in light of Booher's alleged fraudulent acts. Appellant's First Assignment of Error is overruled.
 II.
In its second Assignment of Error, appellant argues that the trial court improperly failed to amend its partial summary judgment in light of evidence introduced regarding the amendments to the commission agreement. We disagree.
Appellant specifically requests we find that if appellant had cause to terminate the agent contract and agent agreement, it had the same cause to terminate the commission agreement and therefore no damages are due Booher pursuant to Count I of the complaint. Appellant bases this argument on the premise that when Booher added handwritten modifications to the commission agreement, the effective result was that all the terms of the agent contract were incorporated into the commission agreement. We find the weight of the evidence proves otherwise. As Booher points out in his brief, had the parties intended this result, they could have rescinded the commission agreement and allowed the agent contract to control, or merely rescinded both and started afresh. Instead, the record suggests that Booher and AMS Vice President Ron Weyer were merely attempting to clarify, without the involvement of counsel, commission issues under the commission agreement. The theoretical melding of contractual terms between the commission agreement and the agent contract, as asserted by appellant, is not supported by the record.
Appellant's Second Assignment of Error is overruled.
 III.
In its third Assignment of Error, appellant claims error in the trial court's construction of the agent contract and its resultant holding that appellant did not terminate the contract "for cause."
The agent contract between company and insurance agent contains the following "for cause" termination clause:
6. TERMINATION
* * *
 B. This Contract may be terminated by the Company without notice for "cause," which term shall include the following:
 1. commission of a fraudulent, illegal or dishonest act adversely affecting the Company; and
 2. violation of the laws, regulations, or rules of any jurisdiction in which the Agent operates, or of any governmental authority exercising jurisdiction over the Agent.
Appellant maintains that the trial court misconstrued Paragraph 6(B) by interpreting it in the conjunctive mode and by effectively reading into it a requirement that "for cause" termination could only take place if Booher had actually committed a crime, which, as noted earlier, was not the outcome of the Ohio Department of Insurance's investigation into this matter. Appellant insists that Paragraph 6(B) is neither intended to be read in the conjunctive, nor meant to grant such substantial deference to a decision by a regulatory agency such as the Ohio Department of Insurance. Thus, argues appellant, even if the court's allegedly flawed construction of Paragraph 6(B) is applied, the evidence showed Booher had committed fraudulent, dishonest, or illegal acts regardless of an official investigative report.
The purpose of contract construction is to determine and effectuate the intent of the parties. Skivolocki v. East Ohio Gas Co. (1974),38 Ohio St.2d 244, paragraph one of the syllabus. It is well established in Ohio that a court must give meaning to all provisions of a contract if possible. German Fire Ins. Co. v. Roost (1897), 55 Ohio St. 581. A court need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous.Blosser v. Enderlin (1925), 113 Ohio St. 121, paragraph two of the syllabus.
We are unable to conclude that Paragraph 6(B) is "clear and unambiguous." We cannot read Paragraph 6(B) in the conjunctive, as urged by Booher and as found by the trial court. Of primary concern is the logically inconsistent outcome rendered by the use of "illegal * * * act" and "violation of the laws" in separate subsections. An inconsistency is patent under this contract, if a "for cause" termination, based on an illegal act, would further require a finding that the agent violated the law, a synonymous requirement. "[C]ommon words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is clearly intended from the face or overall contents of the instrument." Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241,245-246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. Although the word "and" is usually interpreted in the conjunctive, we are permitted to interpret it in the disjunctive "if the sense requires it." See Clagg v. BaycliffsCorp. (1998), 82 Ohio St.3d 277, 280; R.C. 1.02.
In State v. Comersford (June 3, 1999), Delaware App. No. 98CAA01004, unreported, we were faced with the interpretation of a sentencing statute that made use of the word "and" in its text:
 Appellant argues that a trial court applying the above statute must find that the individual offender meets all four criteria in order to impose the maximum prison term. We disagree. The statute in question merely provides a listing of the four types of offenders upon which the trial court may impose the maximum prison term. Thus, R.C. 2929.14(C) requires that the trial court, in order to impose the maximum term of imprisonment, must find that an offender meets at least one of the four criteria designated therein.
 Id. at 2.
17 C.J.S. Contracts § 296, p. 700, et seq. states that: "Words cannot be read into a contract which import an intent wholly unexpressed when the contract was executed. * * * It is not the province of the court to alter a contract by construction or to make a new contract for the parties; its duty is confined to the interpretation of the one which they have made for themselves * * *."
We therefore hold that interpreting Paragraph 6(B) in the conjunctive mode results in an unintended and inconsistent reading, and no other reasonable construction is possible than the disjunctive. German FireIns. Co., supra.
Appellant further argues that, even if Booher's "for cause" termination required both subsections of Paragraph 6(B), the trial court failed to independently review whether Booher had violated the laws, regulations, or rules of Ohio.
The magistrate rendered the following finding in his decision:
 Much of the evidence regarding Plaintiff's activity may support a claim of questionable honesty or conduct adversely affecting the company. The record, however, does not reveal any actual illegality and violation of laws, regulations or rules of the jurisdiction governing the agent's conduct. The closest item presented regarding illegal activity or conduct violating regulations appears in a Consent Decree Agreement entered into between Mr. Booher and the Ohio Department of Insurance that recites conduct that may be illegal but makes no finding that Mr. Booher acted illegally. In addition, nothing presented in the record indicates that, pursuant to the investigation brought to fruition by the Consent Decree Agreement, the Director of the Ohio Department of Insurance presented the matter to an appropriate prosecutor for further action. (See ORC #3901.11)(sic).
Magistrate's Decision, February 7, 2000, at 8.
We find the trial court's substantial deference to the decision of the Superintendent of Insurance, who chose to settle the complaint against Booher via a consent agreement, was an improper application of the terms of the agent contract; i.e., the court essentially defined a "violation of laws, regulations, or rules" by Booher as an illegal violation referred for actual prosecution. As the Ohio Supreme Court recognized inWalden v. State (1989), 47 Ohio St.3d 47, there are qualitative differences between criminal and civil actions which "militate against giving criminal judgments preclusive effect in civil or quasi-civil litigation." Id. at 52. Although we are dealing herein with a decision of the Superintendent of Insurance as opposed to a criminal judgment, we believe the logic of Walden is applicable. Therefore, we find error in the trial court's excessive reliance on the Superintendent's consent agreement in determining whether or not Booher's termination was for cause under Paragraph 6(B), in particular as it relates to any potential "rule" or "regulatory" violations, which were inadequately addressed by the magistrate.
Appellant's Third Assignment of Error is sustained. We hold that these issues warrant further independent review by the trier of fact as to whether Booher's conduct violated either subsection of Paragraph 6(B), pursuant to the standards set forth in our ruling in the Assignment of Error above.
 IV.
In its fourth Assignment of Error, appellant argues that the court erred in failing to properly apply the termination provisions in the agent agreement (as opposed to the agent contract) and by failing to treat the pertinent post-May 1, 1992 commissions as being payable pursuant to the agent agreement. In essence, appellant contends that the trial court applied the terms of the agent contract to transactions that should have fallen under the agent agreement, which covered commissions payable to Booher's corporate entities, as opposed to Booher as an individual.
We note the longstanding rule that a court of appeals is bound by the record before it and may not consider facts extraneous to the record.State v. Ishmail (1978), 54 Ohio St.2d 402. Although the trial court made a general reference to the agent agreement, our review of the file comports with appellee's assertion that the document was never entered into evidence. We therefore have no basis to further address this issue.
Appellant's Fourth Assignment of Error is overruled.
 V.
In its Fifth Assignment of Error, AMS argues that the trial court's decision on damages is inconsistent and based on erroneous calculations. We disagree, noting that we will herein address damages only as to Count I, based on our remand regarding Count III.
In appellate review of contractual damages, the factual determinations of a trier of fact will not be overturned as being against the manifest weight of the evidence if there is some competent, credible evidence going to said element of the cause of action. Hofner v. Davis (1996),111 Ohio App.3d 255, 259, citing C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
A review of the transcript reveals that Booher, as plaintiff, called an actuarial expert, Dale Hyers, to calculate damages. (Transcript Vol. 7 at 67-140, Vol. 8 at 5-74, Vol. 12). Hyers testified that he operates his own actuarial insurance management firm, and has engaged himself in this area since 1964. A summary of the methodology utilized by Hyers is as follows.
Hyers first looked at Booher's monthly "persistency rate," the percentage of groups that would statistically renew or "persist," based on Booher's history as an agent from 1980 to 1992. (Thus, a persistency rate is the opposite of a "lapse rate.") Hyers calculated Booher's personal persistency rate of .9788, which he used throughout the calculation. There was also a minor adjustment made for mid-year lapses. Thus, at this rate, only about 10% of the groups would still be in existence after ten years (Tr. Vol. VII at 98). Next, Hyers figured a monthly "premium trend factor," which adjusts for the fact that premiums tend to go up over time. This number was pulled from the "AMS rate file." (Tr. Vol. VII at 96).
Hyers then utilized a standard ten percent rate for interest, explaining: "It is used to determine a value in all of my calculations on February 1, 1999, or to date. And if a payment were due from that date, then we will increase it ten percent annual basis. If payment is due after that date, then it will be decreased by using ten percent discount." (Tr. Vol. VII at 97). The three above rates were then put together to address what commissions Booher would have expected from the original existing block of business, and the value of those commissions as of the given date of February 1, 1999. The initial raw figure worked out to $4,526,551, and after the effect of interest and discount, to $3,363,000. Hyers then accounted for an apparent standard practice of a forty-five day delay in receipt of commission checks, and subtracted Booher's previous adjusted settlement monies to reach $3,023,754, the award to Booher on Count I, breach of commission agreement.
AMS specifically challenges the persistency rate time parameters, and questions on appeal why the court did not utilize the period from 1992, the date of commission agreement, to 1996, the year of Booher's termination. Secondly, AMS challenges a failure to use AMS's standard persistency and lapse rates, which would be more a composite of all of its agents. However, we conclude that the methodology approved by the trier of fact was well within the trial court's discretion, and is supported by the competent testimony of an independent expert. We thus have no basis to substitute our judgment therefor. Hofner, supra. Appellant's Fifth Assignment of Error is overruled as to Count I.
 VI.
In its Sixth Assignment of Error, AMS asserts the trial court erred in accepting Booher's expert's calculation as to the inclusion of an 80% "renewal bonus" allegedly not provided for in the commission agreement. We disagree.
Booher's renewal bonus commission, which is by definition a percentage of the renewal commission, was not part of the original commission agreement. However, Booher testified that he reached an oral agreement with AMS vice-president Ron Weyers to include said renewal bonus commission based upon the number of lives insured. Thus, the renewal commission was to be multiplied by the renewal bonus commission percentage to reach a bottom-line commission.
Essentially, AMS argues that the judgment of the trial court concerning the renewal bonus commission was against the manifest weight of the evidence. A trial court's findings of fact are presumed to be correct and will not be reversed as being contrary to the manifest weight of the evidence if there is competent and credible evidence supporting the finding. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80.
The record provides sufficient competent evidence that AMS acquiesced to and implemented a renewal bonus commissions program on top of the flat 8% commission after the modification of the original commission agreement. We therefore will not reverse, as against the manifest weight of the evidence, the duly-considered assessment of damages by the trial court in this regard.
Appellant's Sixth Assignment of Error is overruled.
 VII.
In its Seventh Assignment of Error, AMS argues that the trial court erred by including a seven percent commission on the Union Teamsters Local 284 account, in contradiction of other rulings. We agree in part.
It is undisputed that Union Teamsters Local 284 was one of the groups in Booher's original ABL block of business. The group was rolled into an AMS plan in November 1993. Booher sought compensation at trial for a special commission rate of twenty percent on Local 284 based on a purported verbal agreement he made with AMS, apparently due to the size and complexity of this account. AMS argues that the amount of the judgment on the commission agreement erroneously includes a seven percent commission on premiums under the Local 284 account, in contravention of the magistrate's conclusion under Count IV of Booher's complaint. The magistrate therein held, inter alia:
 * * * The evidence adduced at trial indicates that Plaintiff, himself, as a function of his service with AMS, created an Ohio Business Healthcare Co-op to encompass groups insured by AMS. As a part of that new affiliation, plaintiff negotiated the commissions payable on groups placed into the Ohio Business Healthcare Co-op, which commission policy was memorialized in a Special Markets Checklist in December, 1994. Plaintiff testified that he helped create and approved the checklist and the commissions were fixed at 2% for renewal business, .5% for administrative fees plus, in addition, Plaintiff would entitled (sic) to a 3% commission on associations he placed into the Co-op. Union Teamsters was just such an association.
 The evidence further indicates that on June 1, 1995, Plaintiff submitted an action placing Union Teamsters into the Co-op by filling out a Request to Modify form and submitting it to AMS with an effective date of July 1, 1995. AMS made the change and began paying Plaintiff commissions on Union Teamsters at 5.5%. Plaintiff's action and the Defendant's acceptance thereof effectively modified any previous verbal agreements the parties had about the Union Teamsters commissions and AMS acted appropriately.
Magistrate's Decision at 9-10.
Turning to Plaintiff's Exhibit 58, the summary of damages calculations for each Count of the complaint, actuarial expert Hyers specifically records that the aforementioned figure of $3,023,754 "[i]ncludes Union Teamsters at 7%." We find the magistrate's acceptance of this portion of Hyers' calculation inherently contradicts the above finding that the parties effectively modified the Local 284 commissions to 5.5%. We are not persuaded AMS has no commission obligation with regard to Local 284. Accordingly, we remand this issue for recomputation of the appropriate amount due applying a 5.5% commission rate.
Appellant's Seventh Assignment of Error is sustained.
 VIII.
In its Eighth Assignment of Error, AMS challenges the propriety of the trial court's refusal to allow any offset from damages for amounts Booher would have incurred in providing services necessary to the continued maintenance of the accounts. We disagree, again noting that we will herein address damages only as to Count I, based on our remand regarding Count III.
In appellate review of contractual damages, the factual determinations of a trier of fact will not be overturned as being against the manifest weight of the evidence if there is some competent, credible evidence going to said element of the cause of action. Hofner, supra, citing C.E.Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus.
AMS herein reiterates its argument from trial that Booher's recovery, if any, should be limited to his actual expected profit, after expenses, from the accounts under the Commission Agreement. AMS thus urges the use of a formula incorporating "expectation interest," i.e., a "[promisee's] interest in having the benefit of his bargain by being put in as good a position as he would have been in had the contract been performed * * *." Restatement of the Law 2d, Contracts (1981) 102-103, Remedies, Section 344.
In addressing this contention at trial, the magistrate determined:
 In those cases [cited by AMS in its argument], awarding income alone, without allowing for the cost of earning that income would be a windfall. In the case at bar, the commissions due are specifically identified in two contracts, neither of which addresses concerns about the cost of Plaintiff's operations. * * * Plaintiff's claims do not sound in loss of expected income from a contract not performed, but, rather, Plaintiff's claims arise under contracts the parties entered into and performed but have now interrupted.
Magistrate's Decision at 12.
We find the clear terms of the Commission Agreement identify the perimeters of potential damages as a matter of law. The evidence adequately supports the fact finding and conclusion of law as to Count I of the complaint.
Appellant's Eighth Assignment of Error is overruled.
 IX.
In its Ninth Assignment of Error, AMS generally challenges the trial court's decision as being against the manifest weight of the evidence. Consistent with and to the extent of our prior rulings in the above Assignments of Error, we sustain, in part, the Ninth Assignment of Error.
 Cross Appeal I.
In his First Assignment of Error on cross appeal, Booher argues that the trial court erred in its application of R.C. 2305.09(C) to his claim of fraudulent inducement against AMS. We disagree.
The statute in question reads as follows:
 An action for any of the following causes shall be brought within four years after the cause thereof accrued:
* * *
(C) For relief on the ground of fraud;
Booher asserted at trial that AMS fraudulently induced him to enter into the arrangement wherein ABL's business was assumed by AMS, by quoting Booher the more attractive "sales rates" for new business than the "manual rates" for takeover business.[2] Nonetheless, the trial court found that the above statute of limitations would bar Booher's claim of fraud against AMS, maintaining that Booher should have recognized any potential fraudulent inducement when he received rate increases for his transferred ABL groups in June and July, 1992. Booher does not dispute the date of these first 1992 renewal notices, but argues that he had no cause to believe that they were anything other than manual rates until other correspondence was obtained in January 1993.
We find no error in the finding of the trial court in this regard. A party is deemed to have discovered what might by the exercise of due diligence have been discovered. Stivens v. Summers (1903), 68 Ohio St. 421. Booher's testimony reveals his extensive experience in various areas of the insurance business for over thirty years, thus diluting the strength of his argument, and we are nonetheless guided by the oft-cited rule that the trier of fact, as opposed to this Court, is in a far better position to weigh the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230.
Booher's First Assignment of Error on cross appeal is overruled.
 II.
Booher's Second Assignment of Error on cross appeal redirects our attention to the issue of the commissions on the Union Teamsters Local 284 account. He specifically contends that the trial court erred in determining that the placement of the Local 284 group in the Ohio Business Healthcare Co-op on July 1, 1995, modified a previous verbal agreement to pay twenty percent renewal commissions on that group. We disagree.
The bulk of the testimony as to this issue came from Amy Paul-Erdman, the supervisor of listing commissions at AMS. She frequently cited to a "special markets checklist" during her testimony, a document which essentially sets forth commissions paid for certain groups. Booher argues that the "checklist" was of questionable value, in that it only applied to newer accounts and to groups with between two and fourteen lives, not larger groups like Local 284. Indeed, Paul-Erdman agreed that she "did not find anything that would have changed it from 20 percent to 5.5 percent." Tr. Vol. XI, at 142. However, as indicated supra, the magistrate concluded that "Plaintiff's action and the Defendant's acceptance thereof effectively modified any previous verbal agreements the parties had about the Union Teamsters commissions * * *." Magistrate's Decision at 10. Paul-Erdman testified that she first heard from Booher about the possible discrepancy in rates in June 1996, nearly one year after the Local 284 account was placed into the Co-op. Tr. Vol. XI, at 123. Thus, we are not inclined to disturb the determination of the trial court in this regard, as the record provides sufficient competent evidence to support the aforesaid finding.
Booher's Second Assignment of Error on cross appeal is overruled.
For the reasons stated in the foregoing opinion, the decision of the Court of Common Pleas, Delaware County, Ohio, is hereby affirmed in part and reversed in part. The matter is hereby remanded for further proceedings consistent with the tenor of this opinion, with directions to independently review whether Booher's actions were in violation of the agent contract, as per our holding in appellant's Third Assignment of Error, and for further review consistent with our holding in appellant's Seventh Assignment of Error. Issues pertaining to damages under Count III of the complaint are otherwise found premature.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio, is affirmed in part, reversed in part and remanded for further proceedings consistent with this opinion.
Milligan, V. J. Hoffman, P.J., concurs. Edwards, J., concurs separately.
[1] Booher dismissed a sixth count of the amended complaint on January 19, 1999.
[2] Booher defined manual rates as follows:
 A manual rate is the standard rate they would charge for an employer with a list of employees, which would deal with age, sex, type of coverage, meaning single, family. Some of them go so far as employee's spouse and employee's child.
 It would deal with location, zip code; it would deal with the industry. And so you could combine all of those together, and the computer spits out the annual rate for those people normally, or the manual rate is the standard at which, for all of those given items that I gave the manual rate, is what it would take for the insurance company to make money. * * *.
Tr. Vol. I, at 53.